IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE M. DAVIS,<br><br>        Plaintiff,<br><br>   v.<br><br>PRISON HEALTH SERVICES, *et al.*,<br><br>        Defendants.<br>_____ / | No. C 09-2629 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION TO COMPEL DISCOVERY OF SETTLING DEFENDANTS' SETTLEMENT AGREEMENT** |

On July 15, 2011, the Court held a hearing on motions by defendants James Ayala, Darryl Griffith, and Alameda County for summary judgment and to compel discovery of the settlement agreement between plaintiff Freddie Davis and Prison Health Services, Leonore Gilbert, Linda Henson, and Bill Wilson. For the reasons set forth below, defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court also GRANTS defendants' motion to compel.

**BACKGROUND**

Plaintiff Freddie Davis, an African-American woman, is a licensed vocational nurse who began working at Santa Rita Jail in Alameda County ("the County") in 1990. Pl.'s Decl. in Opp'n to Summ. J., ¶ 9. She was an employee of Prison Health Services, Inc. ("PHS"), with whom the County contracted to provide nursing services at the jail. *Id*. Plaintiff is also a Northern California NAACP and Service Employees International Union leader, and had a close relationship to former Alameda County Sheriff Charles Plummer. *Id*. ¶¶ 7, 10, 11.

In 2006, plaintiff complained that PHS's Director of Nursing, Linda Henson, demonstrated a

pattern of racist and sexist behavior towards her at work. *Id.* ¶ 16. Plaintiff claims Henson[1] told a racist joke in her presence, including the words: "[n]iggers can't chew gum and walk at the same time." *Id.* ¶ 20. Around April 2006, plaintiff says she heard Henson direct more racist and sexist comments towards her, including "[t]here goes that stupid black bitch." *Id.* She also complained that her PHS supervisor, Sharon Gober, was "unprofessional and abusive" towards her, cursing at plaintiff for taking "pre-approved time off to attend [her] mother's 80th birthday celebration." *Id.* ¶ 23.

By March 2006, plaintiff joined thirty-four other nurses and employees in signing a petition protesting Gober's "intimidating conduct." *Id.* ¶ 26. In April 2006, plaintiff co-chaired a meeting about the petition with PHS management and defendant Lieutenant James Ayala from the Sheriff's Department. *Id.* ¶ 29. At the meeting, Ayala allegedly "openly threatened to revoke [the] protesting nurses' security clearances," and in response, plaintiff said she would report Ayala's conduct to the undersheriff. *Id.* ¶ 30. Gober then charged plaintiff with creating a hostile work environment for Gober, herself, but that charge was later dismissed after a conference between the nurses' union and PHS management. *Id.* ¶¶ 28, 32.

In the wake of the nurses' petition and resulting meetings, plaintiff complained that Henson and defendant Sargent Darryl Griffith from the Sheriff's Department continued to harass her. In April 2006, plaintiff claims she heard[2] Griffith tell Henson "words to the effect that 'That Black bitch needs to be brought down a notch. I can't wait to walk her Black ass out of here. She needs to be taught a thing or two.'" *Id.* ¶ 22. Before a meeting with Griffith and PHS official Bill Wilson, plaintiff alleges she overheard Griffith say, "[n]ow we got the black bitch." *Id.* ¶ 34.

In May 2006, Ayala investigated plaintiff and wrote a memorandum to PHS administrator

---

[1] Defendants object to the inclusion of allegations about the conduct of PHS and its employees as evidence. Defs.' Reply to Opp'n to Mot. for Summ. J., 3:13-14. However, plaintiff's first-hand observations of PHS employee behavior is both admissible and relevant because plaintiff's causes of action involve the connection between PHS and County employee conduct towards plaintiff.

[2] Defendants claim this exchange is inadmissible as hearsay because plaintiff only claims she overheard it and it does not reference plaintiff specifically. The objection is overruled because plaintiff claims she heard it first-hand, and because it is reasonable to infer, at least for the purposes of summary judgment, that the comment was made about her.

Defendants make numerous other evidentiary objections in their briefs. This order only addresses those objections to the extent that this order cites the evidence at issue.

Leonore Gilbert detailing "Inappropriate Behavior by Nurse F. Davis." Defs.' Decl. in Supp. of Mot. for Summ. J, Ex. O; *see* Pl.'s Decl., ¶¶ 41, 42, 44. In June 2006, Ayala wrote a memorandum to Sheriff Plummer recommending that plaintiff's security clearance be revoked. Defs.' Decl., Ex., N. Though Ayala failed in his effort to revoke plaintiff's clearance, he allegedly told her in a June 2006 meeting, "words to the effect that I need to take a good look at myself, I need to say [sic] in my place, and that even though he couldn't pull my site clearance 'PHS will take care of you.'" Pl.'s Decl. ¶ 39. In that same month, Griffith allegedly told her, "PHS doesn't like smart niggers; they want you out of here . . . ." *Id.* ¶ 40.

In July 2006, plaintiff was transferred to Housing Unit 9 in Santa Rita Jail. *Id.* ¶ 47. Plaintiff states that Housing Unit 9 is the mental health unit, and she describes it as "the worst place to work" at the jail. *Id.* She claims, "[u]nstable inmates in this unit assault nurses, throw feces at them, and do other abusive things." *Id.* The parties dispute whether Ayala, PHS, or the two in concert transferred her. *Id.*

Plaintiff claims that after her transfer to Housing Unit 9, defendants' harassment escalated. Plaintiff states that she was investigated "for supposedly being slow to respond to a suicide in Housing Unit 9, which I was not; for running a late sick call, which I didn't do." *Id.* ¶ 50. Plaintiff states, "For the first time in 16 years of good performance as a LVN, I was being accused of providing substandard medical care and not doing my job." *Id.* In August 2006, Henson issued a disciplinary warning threatening punishment "up to and including termination." *Id.* ¶ 52.

Plaintiff states that the issues at work caused her severe emotional distress and caused her blood pressure to "soar to life-threatening levels." *Id.* ¶ 55. Plaintiff's physician and psychologist ordered her to take medical leave. *Id.* Plaintiff filed an unfair labor practice complaint against PHS, which was later settled. *Id.* ¶¶ 57-58.

On June 12, 2009, plaintiff filed this lawsuit, alleging three causes of action against PHS and its employees; one cause of action for aiding and abetting against only the County and its employees; and three causes of action against both PHS and its employees, as well as Ayala, Griffith, and the County.

1  Plaintiff settled with PHS and its employees; only Ayala, Griffith, and the County remain in the lawsuit.[3]
2  Plaintiff's four causes of action against Ayala, Griffith, and the County are: (1) aiding and abetting
3  PHS's discrimination, racial harassment, and retaliation in violation of California's Fair Employment
4  and Housing Act ("FEHA"); (2) depriving plaintiff of her First Amendment rights in violation of 42
5  U.S.C. § 1983; (3) discriminating against plaintiff based on her race and gender in violation of the Fifth
6  and Fourteenth Amendments and § 1983; and (4) conspiring with PHS to infringe on plaintiff's
7  constitutional rights in violation of §§ 1983 and 1985.

8  Defendants move for summary judgment on all claims, and have filed a motion to compel
9  disclosure of the confidential settlement agreement between plaintiff and the PHS defendants.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence … will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most

---

[3] Plaintiff states that as part of her settlement with PHS, she is no longer employed by PHS. *Id.* ¶ 59.

4

favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

## DISCUSSION

### I.     FEHA claims

Plaintiff alleges that Ayala and Griffith are liable under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(i), for aiding and abetting plaintiff's former PHS supervisors' "acts of discrimination, racial harassment, and retaliation."[4] Second Amended Compl. ("SAC") ¶ 99. FEHA makes it unlawful "[f]or an employer, because of the race, … [or] sex … of any person … to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). Further, no employer or person, "because of race … [or] sex … [may] harass an employee, an applicant, or a person providing services pursuant to a contract." *Id*. § 12940(j)(1). FEHA also bars employers from retaliating against employees, as an employer may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part." *Id*. § 12940(h). Finally, Section 12940(i) makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

### A.     Ayala and Griffith's liability for aiding and abetting discrimination and retaliation

Plaintiff claims that Ayala and Griffith are individually liable under FEHA for aiding and abetting PHS's "acts of discrimination, racial harassment, and retaliation." SAC ¶ 99. However, California courts have held that individuals are not liable for acts of discrimination or retaliation under

---

[4] Plaintiff concedes that the County cannot be held liable for aiding and abetting under FEHA. Pl.'s Supplemental Opp'n at 2:4-5.

5

FEHA. In *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 62-63 (1996), the California Court of Appeals held that individuals cannot be held liable under FEHA for acts of discrimination, holding that the state legislature did not envision imposing the "risk of personal liability for personnel management decisions later considered to be discriminatory," on individuals. The California Supreme Court adopted the *Janken* court's reasoning in *Reno v. Baird*, 18 Cal. 4th 640, 663 (1998), holding that "individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts."

In *Jones v. The Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1164 (2008), the California Supreme Court held that individuals are not personally liable for retaliatory acts. Just as the *Janken* court worried about the consequences of imposing personal liability for discrimination, the *Jones* court found that if employees were individually liable for retaliation claims under FEHA, "supervisors might be particularly afraid to impose discipline on [an] employee or make other lawful personnel decisions out of fear the employee might claim the action was retaliation." *Id.* at 1168. The *Jones* court held, therefore, that "[n]o reason appears why [the legislature] would want to make nonemployer individuals personally liable for retaliation but not for discrimination." *Id.* Since Ayala and Griffith may not be held liable individually for the underlying acts, they may not be held liable for aiding and abetting those acts either.

Accordingly the Court GRANTS defendants' motion for summary judgment on plaintiff's claims that Ayala and Griffith aided and abetted PHS's discrimination and retaliation.

### B. Ayala and Griffith's liability for aiding and abetting harassment

Since *Janken*, California courts have held that whereas individuals are not liable for discrimination or retaliation, they may be individually liable for harassment. *Janken*, 46 Cal. App. 4th at 62-63  The *Janken* court viewed "harassment as a type of conduct not necessary to a supervisor's job performance," as opposed to the sorts of "inherently necessary" personnel decisions "which might later be considered discriminatory." *Id*.

A reasonable jury could find that Ayala and Griffith aided and abetted PHS employees' alleged harassment of plaintiff. Plaintiff alleges that in March 2006, she heard Griffith tell a PHS supervisor

"words to the effect that 'That Black bitch needs to be brought down a notch. I can't wait to walk her Black ass out of here. She needs to be taught a thing or two.'" Pl.'s Decl., ¶ 22. In June 2006, plaintiff claims Griffith told her that "PHS doesn't like smart niggers; they want you out of here . . . ." *Id.* ¶ 40. A reasonable jury could find that Griffith intended to aid and abet PHS in harassing plaintiff by referring to plaintiff as a "[b]lack bitch," by declaring that PHS viewed her as a "smart nigger," and by telling PHS – plaintiff's direct employer – that "[s]he needs to be taught a thing or two."

With regard to defendant Ayala, plaintiff claims that in June 2006, Ayala said to her, "words to the effect… that I need to stay in my place, and that even though he couldn't pull my site clearance 'PHS will take care of you.'" *Id.* ¶ 39. The phrases "need to stay in [your] place," and "PHS will take care of you," combined with Ayala's own effort to revoke plaintiff's security clearance, present triable issues of fact as to whether Ayala intended to aid and abet PHS's harassment of plaintiff.

Accordingly, the Court DENIES defendants' motion for summary judgment on plaintiff's FEHA claim with respect to Ayala and Griffith's alleged aiding and abetting of harassment.

## II. Deprivation of First and Fourteenth Amendment rights under 42 U.S.C. § 1983

Plaintiff alleges that the County, Ayala, and Griffith violated 42 U.S.C. § 1983 by retaliating against her for exercising her First Amendment right to freedom of speech and association. SAC ¶ 102. In order to state a claim for a First Amendment violation under § 1983, a plaintiff must "demonstrate, as a threshold matter, that [she] suffered an adverse employment action." *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Then, the plaintiff must show that "(1) the speech at issue was constitutionally protected and (2) that the speech was a substantial motivating factor in the adverse employment action." *Id.* If plaintiff makes these two showings, "the burden shifts to the public employer to demonstrate either that . . . its legitimate administrative interests outweighed [plaintiff's] . . . First Amendment rights or that . . . it would have reached the same decision even in the absence of the plaintiff's protected conduct." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 976-977 (9th Cir. 2002).

Defendants argue that summary judgment should be granted because although plaintiff may have engaged in "some First Amendment activity," plaintiff fails to show that Ayala and Griffith took an

7

adverse employment action against her, or that plaintiff's speech activity motivated any such action. Defs.' Mot. for Summ. J, 13-14. Defendants also assert that Ayala and Griffith's conduct would have been the same regardless of plaintiff's speech activity.

At issue is plaintiff's claim that defendants punished her, or helped PHS punish her, for signing a petition and for generally protesting the intimidating conduct of PHS supervisor Sharon Gober. Pl.'s Decl., ¶¶ 23, 26, 29. Plaintiff claims Gober was "unprofessional and abusive" towards her, and cursed at her for taking "pre-approved time off to attend [her] mother's 80th birthday celebration." *Id.* ¶ 23. In March 2006, plaintiff signed a petition, along with thirty-four other nurses, protesting Gober's conduct. *Id.* ¶ 26. In April 2006, plaintiff attended a meeting where Ayala "openly threatened to revoke protesting nurses' security clearances." *Id.* at ¶ 29. Though plaintiff claims she had "an excellent employment history at PHS . . . [and had earned] accolades for [her] work" before 2005 and 2006, in May 2006, Ayala investigated plaintiff and wrote a memorandum to PHS administrator Leonore Gilbert detailing "Inappropriate Behavior by Nurse F. Davis." Defs.' Decl. in Supp. of Mot. for Summ. J, Ex. O; *see* Pl.'s Decl. ¶¶ 41, 42, 44. In June 2006, Ayala wrote a memorandum to Sheriff Charles Plummer recommending that plaintiff's security clearance be revoked. Defs.' Decl., Ex. N. In July 2006, plaintiff was involuntarily transferred to what she describes as "the worst place to work" in the jail, Housing Unit 9. *Id.* ¶ 47. The parties dispute whether Ayala and Griffith "acted in concert with PHS" to make the transfer. *Id.* ¶ 47.

Though defendants argue there is no nexus between plaintiff's acts of protest and the investigation against her, or her involuntary transfer, a reasonable jury could find otherwise. Plaintiff claims that during the three months following plaintiff's acts of protest against Gober, Ayala and Griffith made threats in face-to-face conversations with her that a reasonable jury could interpret as responsive to plaintiff's protest activity. In May 2006, she alleges that Ayala told her, "words to the effect that … I need to s[t]ay in my place, and that even though he couldn't pull my site clearance 'PHS will take care of you.'" *Id.* ¶ 39. A PHS official, Leonore Gilbert, allegedly nodded in affirmation as Ayala spoke. *Id.* Also in May 2006, Griffith allegedly told her, "PHS doesn't like smart niggers, they want you out of here . . . ." *Id.* ¶ 40. Plaintiff claims she also overheard Griffith tell a PHS official "[n]ow we got the black bitch," as plaintiff approached the official's office for a meeting. *Id.* ¶ 34.

8

Plaintiff's allegations about defendants' threats, investigation against her, and collaboration with PHS officials present triable issues of fact as to whether plaintiff's speech "was a substantial motivating factor" behind Ayala and Griffith's conduct, and whether that conduct amounted to "adverse employment action" against her. *Huskey*, 204 F.3d at 899.

Finally, defendants assert that Ayala and Griffith's actions would have been the same regardless of plaintiff's speech. The Court finds that defendants have not met their burden on summary judgment to show that they "would have reached the same decision even in the absence of the protected conduct." *Soranno's Gasco Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). "The *Mt. Healthy* test requires defendants to show, by a preponderance of the evidence, that they would have reached the same decision in the absence of the protected conduct. The defendants here have merely established that they could have [investigated plaintiff and had her transferred]. This court has clearly stated that this is insufficient to support summary judgment." *Id*. at 1315.

Though plaintiff's First Amendment claims against Ayala and Griffith survive summary judgment, plaintiff's parallel claims against the County do not. "A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Rather, a county or municipality may only be held liable under § 1983 "when execution of a government's policy or custom inflicts the [constitutional] injury." *Id*. Alternatively, municipal liability under Section 1983 may be "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich*, 308 F.3d at 985. "The policymaker must have knowledge of the constitutional violation and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

Plaintiff asserts that there are triable issues as to whether the Sheriff, Undersheriff, Assistant Sheriff, Division Commander and "other final policymakers" directed, ratified, or approved of the unlawful actions against plaintiff. However, plaintiff has not shown that any of these individuals possessed "final policymaking authority." Moreover, "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be

9

responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986) (citations and footnote omitted); *see also Ulrich*, 308 F.3d at 985.

Nor has plaintiff submitted evidence showing that these individuals directed, ratified or approved of the unlawful actions against plaintiff. Plaintiff does not present evidence that any of Ayala or Griffith's superiors had "knowledge of the constitutional violation and actually approved of it." Plaintiff only points to evidence that Ayala and Griffith's superiors condoned or assisted in the investigation against plaintiff. *See* Pl.'s Supplemental Opp'n, 3-5. Plaintiff has not raised a triable issue of fact as to whether they approved of their subordinates' alleged efforts to punish her *because* of her speech activities.

Accordingly, the Court DENIES defendants' motion for summary judgment on plaintiff's claim that Ayala and Griffith infringed on her First Amendment rights in violation of § 1983, but GRANTS the motion with respect to plaintiff's parallel claim against the County.

### III. Discrimination claims under 42 U.S.C. § 1983

Plaintiff claims that the County, Ayala, and Griffith discriminated against her based on her race and gender in violation of 42 U.S.C. § 1983. SAC ¶ 105. Specifically, plaintiff claims that her race and gender motivated defendants to discipline her unjustifiably in violation the Equal Protection Clause of the Fifth and Fourteenth Amendments. Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 17:5-24. Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (internal citations and quotations omitted). Further, "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, [or] participates

in another's affirmative acts . . . that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978). Plaintiff may allege that defendants deprived her of a constitutional right by "participating in another's affirmative acts," "not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.*

A reasonable jury could find that Ayala and Griffith acted "with an intent or purpose to discriminate[] against" plaintiff because she is an African-American woman. *Thornton*, 425 F.3d at 1166. In March 2006, plaintiff allegedly heard Griffith tell a PHS supervisor "words to the effect that 'That Black bitch needs to be brought down a notch. I can't wait to walk her Black ass out of here.'" Pl.'s Decl. ¶ 22. In June 2006, she claims Griffith told her that "PHS doesn't like smart niggers; they want you out of here . . . ." *Id*. ¶ 40. A reasonable jury could find that by referring to plaintiff as a "bitch" and a "smart nigger," Griffith intended to discriminate against plaintiff because of her race and her gender. In June 2006, plaintiff also claims Ayala said to her, "words to the effect . . . that I need to s[t]ay in my place . . . ." *Id*. ¶ 39. The phrase "need to stay in your place" presents a triable issue as to whether Ayala intended to discriminate against plaintiff based on her race and her gender.

A reasonable jury could also find that Ayala and Griffith violated plaintiff's equal protection rights by participating in PHS's disciplinary acts against her. Plaintiff alleges that PHS, Ayala, and Griffith worked together to punish her, and that the punishment was motivated, at least in part, by plaintiff's race and gender. SAC ¶¶ 64, 79, 105. In support, plaintiff claims that in May 2006, Ayala admitted to attempting to constructively terminate her by revoking her security clearance. Pl.'s Decl. ¶¶ 38-39. According to plaintiff he said, "words to the effect . . . that even though he couldn't pull my site clearance 'PHS will take care of you,'" and that a PHS official, Leonore Gilbert, nodded in affirmation as Ayala spoke. *Id*. ¶ 39. In August 2006, PHS's Linda Henson wrote plaintiff a disciplinary memo relying on Ayala's investigation and allegations, including that plaintiff withheld medicine from inmates, which plaintiff denies. Defs.' Decl., Ex. O at 2; Pl.'s Decl. ¶¶ 42, 44. In July 2006, Henson, who plaintiff claims had directed a slew of racist slurs at her including "stupid black bitch," Pl.'s Decl. ¶ 20, allegedly transferred plaintiff "in concert" with Ayala, to the prison's most undesirable unit as punishment. *Id*. ¶¶ 47,48. Finally plaintiff claims Griffith said, among PHS

11

officials at a disciplinary meeting, "[n]ow we got the black bitch," and to her privately, "PHS doesn't like smart niggers; they want you out of here." *Id.* ¶¶ 34, 40. These claims present triable issues of fact from which a jury could find that Ayala and Griffith participated or helped "set in motion" PHS's disciplinary acts against plaintiff. *Johnson*, 588 F.2d at 743-44. A reasonable jury could further find that plaintiff's race and gender motivated the discipline, and that Ayala and Griffith, as public employees, knew or should have known that their participation in such discipline would "inflict . . . constitutional injury." *Id.*

Though plaintiff's § 1983 discrimination claims regarding Ayala and Griffith's conduct survive summary judgment, plaintiff's claims against the County do not. As discussed in Part II, plaintiff cannot sustain a § 1983 against the County because she has not submitted any evidence showing that an official with final policymaking authority directed, ratified, or approved of the unlawful actions against plaintiff.

Therefore, the Court DENIES defendants' motion for summary judgment on plaintiff's § 1983 discrimination claims with respect to Ayala and Griffith, but GRANTS defendants' motion with respect to the County.

### IV. 42 U.S.C. § 1985 claims

Plaintiff claims that Ayala and Griffith are liable under 42 U.S.C. § 1985 for conspiring with PHS to deprive her of her constitutional rights. SAC ¶ 107. Section 1985 provides, in relevant part, that

> If two or more persons in any State or Territory . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(c). Plaintiff must show four elements to prevail at summary judgment on her § 1985 claim: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). Plaintiff must also show "a deprivation of that right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind

12

1 the conspirators' action." *Id.* (internal quotations and citations omitted).

2 As discussed in Part III, plaintiff has shown that a reasonable jury could find that PHS, Griffith, and Ayala worked together to discriminate against her and deprive her of the equal protection of law, and that racist and gender-based animus could have motivated their actions. Ayala's investigation of plaintiff, attempt to revoke her security clearance, comments including that plaintiff needed "to s[t]ay in [her] place, and that even though [Ayala] couldn't pull [plaintiff's] site clearance 'PHS will take care of [her],'" *Id.* ¶ 39, along with Griffith's participation in disciplinary meetings and comments like, "[n]ow we got the black bitch," and "PHS doesn't like smart niggers; they want you out of here," present triable issues of fact as to whether defendants conspired with PHS to deprive plaintiff of her equal protection rights through allegedly racist and sexist harassment, an unwanted transfer, and a disciplinary investigation.

Therefore, the Court DENIES defendants' motion for summary judgment regarding plaintiff's § 1985 claim with respect to Ayala and Griffith. However, because plaintiff does not allege any facts or theory upon which the County, itself, may be held liable under § 1985, the Court GRANTS defendants' motion for summary judgment with respect to the County.

## V.    Qualified immunity

Defendants argue that they are entitled to qualified immunity and are thus shielded from § 1983 liability. In *Harlow v. Fitzgerald*, the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As described in Parts III and IV, plaintiff's allegations that Ayala and Griffith unlawfully discriminated and participated in adverse employment actions against her because of racist and gender-based animus survive summary judgment. Since a "reasonable person would have known" that trying to terminate or help punitively transfer an employee because of such animus would cause constitutional injury to that employee, defendants are not entitled to qualified immunity.

13

**VI.  Defendants' motion to compel discovery of settling defendants' settlement agreement with plaintiff**

Defendants have moved to compel plaintiff to disclose the terms of plaintiff's settlement agreement with PHS, Gilbert, Henson, and Wilson. Defendants contend that the settlement agreement must be disclosed because, as alleged joint tortfeasors with the PHS defendants, the County defendants would be entitled to an offset of the amount of settlement, and the amount of attorneys' fees, received by plaintiff. Plaintiff opposes disclosure, asserting that there is no authority for a credit based on another defendant's settlement in § 1983, § 1985, or FEHA cases. The PHS defendants oppose disclosure on the ground that the settlement agreement is confidential, and they request that if the Court orders disclosure, that the disclosure be limited to "attorneys' eyes only."

The Court finds that it is appropriate to order disclosure of the settlement agreement. The settlement is relevant to determining an offset of attorneys' fees, *see Corder v. Brown*, 25 F.3d 833, 839-40 (9th Cir. 1994) (citing *Miller v. Apartments & Homes of New Jersey, Inc.*, 646 F.2d 101 (3d Cir.1981), and holding "a non-settling defendant is entitled to offset attorney's fees owed by the amount already paid by settling defendants."), and perhaps an offset of damages. *See Miller*, 646 F.2d at 110 (holding that defendants are entitled to an offset by the amount paid by settling co-defendants in a 42 U.S.C. § 1988 case).[5] In addition, the settlement agreement may be relevant to exploring whether the PHS witnesses, who the Court expects would testify at trial, have any bias. The fact that the parties themselves agreed to hold the settlement confidential does not override the remaining defendants' interests in obtaining relevant evidence.[6]

---

[5] The parties have not cited any on point authority in the Ninth Circuit regarding whether, where the defendants are alleged to be joint tortfeasors in a civil rights action, a non-settling defendant is entitled to an offset of damages based on a co-defendant's settlement,. The Court reserves judgment on this question, and if this case proceeds to trial, will address it at the time of trial.

[6] Nothing about the settlement has been demonstrated to warrant its handling on an "attorneys-eyes-only" basis.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED IN PART and DENIED it in part. (Docket No. 74). The Court also GRANTS defendants' motion to compel disclosure of plaintiff's settlement agreement with PHS, Gilbert, Henson, and Wilson. (Docket No. 78).

**IT IS SO ORDERED.**

Dated: August 3, 2011

SUSAN ILLSTON
United States District Judge