J. RANDALL ANDRADA (SBN 70000)
randrada@andradalaw.com
LYNNE G. STOCKER (SBN 130333)
lstocker@andradalaw.com
NICOLE ROMAN (SBN 267730)
nroman@andradalaw.com
**ANDRADA & ASSOCIATES**
**PROFESSIONAL CORPORATION**
180 Grand Avenue, Suite 225
Oakland, California 94612
Tel.: (510) 287-4160
Fax: (510) 287-4161

Attorneys for Defendants
COUNTY OF ALAMEDA, CAPTAIN JAMES E. AYALA,
and LIEUTENANT DARRYL GRIFFITH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FREDDIE M. DAVIS,

Plaintiff,

v.

PRISON HEALTH SERVICES; et al.,

Defendants.

Case No.: 3:09-CV-02629-SI

**OPPOSITION TO MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-STATUTORY COSTS**

DATE: April 20, 2012
TIME: 9:00 a.m.
COURTROOM: 10 (Judge Illston)

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

## TABLE OF CONTENTS

**Page**

**I. INTRODUCTION** .......... 1

**II. ATTORNEYS' FEE AWARDS ARE NOT MANDATORY** .......... 2

**III. THE LITIGATION SERVED NO PUBLIC PURPOSE** .......... 3

**IV. CAPTAIN AYALA WAS NOT THE FOCUS OF PLAINTIFF'S CASE** .......... 4

**V. THE FEES SHOULD BE REDUCED BECAUSE THE SUCCESS WAS LIMITED** .......... 5

**VI. PLAINTIFF'S FEE REQUEST IS PATENTLY UNREASONABLE** .......... 8

**A. Price and Associate's Attorneys' Fee Request is Unreasonable** .......... 10

1. **Attorneys' Fees Requested for Pamela Price** .......... 11

2. **Attorneys' Fees Requested for Junior Associates** .......... 12

**B. Price and Associates Request for Law Clerk Fees is Unreasonable** .......... 13

**C. Price and Associates Hours are Excessive and Unreasonable** .......... 13

**D. Fania Davis' Fee Request is Unreasonable** .......... 15

**E. Request for Paralegal Fees is Unreasonable** .......... 16

**F. Darryl Parker's Fee Request is Unreasonable** .......... 16

**G. Darryl Parker's Billing Practices are Deficient** .......... 17

**H. The Entire Fee Request is Unreasonable in this Economy** .......... 18

**VII. THE FEES SHOULD BE REDUCED DUE TO IMPROPER BILLING** .......... 19

**VIII. THE FEES SHOULD BE REDUCED FOR OVERSTAFFING, DUPLICATION, AND EXCESSIVE CONFERENCING** .......... 19

**IX. NON-STATUTORY COSTS** .......... 20

**X. CONCLUSION** .......... 22

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Andrade v. Jamestown Housing Authority*,
82 F.3d 1179, 1190 (1st Cir. 1996) ........................................10, 18

*Beach Colony II v. Cal. Coastal Comm'n*,
166 Cal.App.3d 106 (1985)........................................3

*Beaty v. BET Holdings, Inc.*,
222 F.2d 607, 612........................................7

*Beneficial Financial Inc. v. Durkee*,
206 Cal.App.3d 912 (1988)........................................11

*Berndt v. California Department of Corrections*
(N.D.Cal. Dec. 16, 2010, C03-3174 VRW BZ) 2010 WL 5209384........................................12

*Blanchard v. Bergeron*,
489 U.S. 87 (1989) ........................................3, 8

*Blum v. Stenson*,
465 U.S. 886, 896, n. 11 (1984) ........................................9

*Byrd v. Blanton*,
149 Cal.App.3d 987 (1983)........................................16

*Cabrales v. County of Los Angeles*,
864 F.2d 1454, 1464 (9th Cir. 1988)........................................9

*Campbell v. National Passenger Railroad Corporation (Amtrak)*,
N.D. Cal. Case No. 4:05-cv-05434 ........................................13, 14, 20

*Chalmers v. City of Los Angeles*,
796 F.2d 1205, 1214 (9th Cir. 1986), opinion amended on denial of reh'g, 808 F.2d 1373, (9th Cir. 1987) ........................................8, 13

*Chicano Police Officer's Assn. v. Stover*,
624 F.2d 127 (10th Cir. 1980)........................................3

*Commissioner, I.N.S. v. Jean*,
496 U.S. 154, 163 (1990) ........................................8

*Common Cause v. Jones*,
235 F.Supp.2d 1076, 1079 (C.D. Cal. 2002)........................................9



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

*Corder v. Brown*,
25 F.3d 833, 836 (9th Cir. 1994)....................5, 8

*Corder v. Gates*,
947 F.2d 374 (9th Cir.1991)....................4, 5, 6

*Farrar v. Hobby*,
506 U.S. 103 (1992)....................3, 4, 6, 8

*Fredenburg v. Contra Costa County*,
172 F.3d 1176 (9th Cir. 1999)....................17

*Freitag v. California Department of Corrections*,
(N.D. Cal. Case No. 3:00-cv-02278)....................13, 14, 18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983). ....................2, 4, 6, 7, 8

*Jones v. Espy*,
10 F.3d 690, 691 (9th Cir. 1993)....................4

*Jones v. K-Mart*,
17 Cal. 4th 329 (1998)....................11

*Jordan v. Multnomah County*,
815 F.2d 1258, 1262 (9th Cir. 1987)....................9, 11, 15, 16, 18

*Lafever v. Acosta, Inc*.
(N.D. Cal., Nov. 8, 2011, C10-01782 BZ) 2011 WL 5416650....................19

*Leuzinger v. County of Lake*
(N.D. Cal., Mar. 30, 2009, C 06-00398 SBA) 2009 WL 839056 ....................16

*Lopez v. San Francisco Unified School Dist.*
385 F.Supp.2d 981, 993 (N.D. Cal. 2005) ....................18

*Mathur v. Bd. of Trs. of S. Ill. Univ.*,
317 F.3d 738, 743 (7th Cir. 2003)....................10

*McGrath v. County of Nevada*,
67 F.3d 248, 254 n. 5 (9th Cir. 1995)....................9

*Mendez v. County of San Bernardino*,
540 F.3d 1109 (9th Cir. 2008)....................2

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
478 U.S. 546, 565 (1986) ....................2



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,*
90 F.3d 1307, 1310 (7th Cir. 1996)....9, 10

*Pierre C. v. Superior Court,*
159 Cal.App.3d 1120 (1984)....11

*Popham v. City of Kennesaw,*
820 F.2d 1570, 1578 (11th Cir. 1987)....7

*Riverside v. Rivera,*
477 U.S. 561 (1986)....2, 8

*Ruff v. County of Kings,*
700 F.Supp.2d 1225, 1243 (E.D. Cal. 2010)....21

*Sable Communications of California v. Pacific Telephone & Telegraph Co.,*
890 F.2d 184, 194 (9th Cir. 1989)....5

*Sealy, Inc. v. Easy Living, Inc.,*
743 F.2d 1378, 1385 (9th Cir. 1984)....9

*Small v. Richard Wolf Med. Instruments Corp.,*
264 F.3d 702, 707 (7th Cir. 2001)....9

*Southeast Legal Defense Group v. Adams,* 657 F.2d 1118, (9th Cir. 1981)....5

*Spegon v. Catholic Bishop of Chicago,*
175 F.3d 544, 550 (7th Cir. 1999)....7, 9, 10, 11

*Thornberry v. Delta Air Lines, Inc.,*
676 F.2d 1240 (9th Cir. 1982)....20

*United Slate, Tile & Composition v. G&M Roofing,*
732 F.2d 495, 502 n.2 (6th Cir. 1984)....19

*Walker v. Contra Costa County,*
227 F.R.D. 529 (N.D.Cal. 2005)....11

*Watts v. County of Sacramento,*
256 F.3d 886 (9th Cir. 2001)....17

*Welch v. Metropolitan Life Ins. Co.,*
480 F.3d 942, 948 (9th Cir. 2007)....19

*Woods v. Graphic Communications,*
925 F.2d 1195 (9th Cir.1991)....3, 4

*Zucker v. Occidental Petroleum Corp.,*
968 F.Supp. 1396, 1403 (C.D. Cal. 1997)....17

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

**STATUTES**

Civil Rights Attorney's Fees Awards Act of 1976,
42 U.S.C. § 1988. .......... 2, 5, 8

**OTHER AUTHORITIES**

S.Rep. No. 94-1011, p. 6 (1976)
U.S.Code Cong. & Admin.News 1976 pp. 5908, 5913 .......... 3

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

## II. INTRODUCTION

By virtue of the instant motion, plaintiff's five attorneys seek to obtain a windfall that they could not obtain at trial – a fee and non-statutory cost award of $1,573,067, which represents three times the verdict rendered by the jury. The request for attorneys' fees is more than $1,000,000 greater than the verdict. It will be even more disproportionate once the Court reduces the award for the amount already paid to plaintiff by PHS.

Plaintiff has not met her burden of showing that she is entitled to an award of attorneys' fees where plaintiff did not further the purpose of §1988. No injunction was issued, no changes were made in any County of Alameda policies, and plaintiff did not return to her place of employment. Notwithstanding the labels attached, plaintiff obtained nothing more than she could have obtained in a garden variety tort liability case.

Plaintiff contends that she brought claims for race discrimination, retaliation, violation of rights under §1983 and FEHA and that the verdict unanimously found that defendant Capt. Ayala had retaliated against her. Plaintiff has neglected to mention the PHS defendants who were the primary focus of plaintiff's action and who were dismissed seven months prior to trial. Plaintiff has neglected to mention that defendant County of Alameda was successful in its motion for summary judgment four months before trial. Plaintiff neglects to mention that defendant Lt. Griffith was completely exonerated at trial.

Plaintiff has neglected to mention that the vast majority of the testimony provided by witnesses at trial or at deposition prior to trial was completely unrelated to the claims made against Capt. Ayala.

Plaintiff has also neglected to mention that she dismissed the race and gender discrimination claims immediately before trial, presumably because she recognized that those claims lacked merit and would not be successful at trial. As such, plaintiff is not entitled to be compensated for time spent on unsuccessful claims or on claims made against dismissed defendants who were the actual focus of the litigation.

Plaintiff has not met the requisite evidentiary burden to support the request for fees. The

declarations submitted in support of plaintiff's motion for fees do not establish the appropriate prevailing hourly rate, i.e., the lodestar, to be applied in this action.

Plaintiff disingenuously attempts to recover costs for which she applied by way of her cost bill and which costs were taxed. For example, costs for deposition transcripts. She also attempts to recover expert witness fees to which she is not entitled by identifying them as 'witness fees.'

It should also be emphasized that the one remaining cause of action at trial did not present novel or complex issues. Further, defendant Ayala is entitled to an offset of the entire settlement paid by the PHS defendants to plaintiff.[1]

## III. ATTORNEYS' FEE AWARDS ARE NOT MANDATORY

A district court may authorize an award of attorneys' fees to a prevailing party in a civil rights action under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The purpose of section 1988 is to ensure that victims of civil rights violations have representation from competent counsel so that they may effectively access the judicial process. *Id*. A prevailing plaintiff should ordinarily recover attorneys' fees unless special circumstances would render that award unjust. *Id*. In determining whether special circumstances exist, the court must evaluate "whether allowing attorney's fees would further the purposes of § 1988 and whether the balance of equities favors or disfavors the denial of fees." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008).

Title 42 U.S.C. § 1988 authorizes courts to award a "reasonable" attorney's fee for prevailing parties in civil rights actions. A "reasonable" fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case, see *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), but that does not provide "a form of economic relief to improve the financial lot of attorneys," *Ibid*. "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion or skill." *Hensley*, 461 U.S. at 436.

Fee awards under section 1988 were never intended to "'produce windfalls to attorneys.'" *Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (plurality opinion) (quoting S.Rep. No. 94-1011, p. 6

[1] The amount of which is known to the Court and counsel but filed under seal.



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

(1976) U.S.Code Cong. & Admin.News 1976 pp. 5908, 5913). Section 1988 expressly grants district courts discretion to withhold attorney's fees from prevailing parties in appropriate circumstances: It states that a court "may" award fees "in its discretion." *Farrar v. Hobby,* 506 U.S. 103, 119 (1992) (conc. opn. of O'Connor, J.)

This Court should exercise its discretion and deny Plaintiff's request for attorneys' fees.

**IV. THE LITIGATION SERVED NO PUBLIC PURPOSE**

Defendant Ayala does not dispute that "[t]he purpose of a fee award is to encourage litigation and voluntary compliance with civil rights laws." *Woods v. Graphic Communications*, 925 F.2d 1195, 1207 (9th Cir.1991) (citations omitted). "Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large...." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989). However, in some circumstances, a plaintiff who formally prevails under § 1983 should not receive attorneys' fees. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

Section 1988 is not "a relief Act for lawyers." [Citation.] It is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorneys' fees available under a private attorney general theory. *Farrar*, 506 U.S. at 122 (conc. opn. of O'Connor, J.). As in *Farrar*, a search for the public purpose that this litigation might have served would be in vain. *Id*. Plaintiff's judgment in the instant case "cannot deter misconduct any more than a bolt of lightning can; its results might be devastating, but it teaches no valuable lesson because it carries no discernable meaning." *Id*.; Cf. *Chicano Police Officer's Assn. v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980) (nuisance settlement that does not promote any public purpose cannot support award of attorneys' fees).

The private attorney general theory "was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." *Beach Colony II v. Cal. Coastal Comm'n*, 166 Cal.App.3d 106, 114 (1985) (applying California Code of Civil Procedure §1021.5)

For whatever reason, the jury found Capt. Ayala liable for retaliating against plaintiff for exercising her First Amendment rights on one occasion. Plaintiff made a single statement about



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

conditions at the workplace that lasted less than five minutes.[2]

By obtaining a damage award against Capt. Ayala, plaintiff did nothing to stimulate compliance with the law. She obtained no injunction. No conduct to be deterred is apparent from the verdict. The verdict did not result in any change to either Capt. Ayala's behavior (he retired before the verdict) or the policies of the County of Alameda Sheriff's Department. Plaintiff's job was not reinstated. There is no indication that plaintiff's suit will benefit other PHS employees and /or employees in general. In this case, as in *Farrar*, "the relevant indicia of success-the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served-all point to a single conclusion: [Freddie Davis] achieved only a *de minimis* victory." *Farrar*, 506 U.S. at 123 (conc. opn. of O'Connor, J.).

In reality, plaintiff's purported civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiff whose rights were allegedly violated. The appropriate fee in this case is no fee at all.

## V. CAPTAIN AYALA WAS NOT THE FOCUS OF PLAINTIFF'S CASE

In the event that this Court contemplates an award of attorneys' fees to plaintiff's counsel, the amount should be apportioned as between the true focus of the litigation, the PHS defendants, and the County defendants. The party that is the focus of the litigation should ordinarily bear the bulk of the litigation's costs. *Woods v. Graphic Communications, Inc.*, 925 F.2d at 1207. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.

Apportionment of attorneys' fees is <u>mandated</u> in situations where the time expended against each defendant is disproportionate to ensure that a defendant is not liable for a fee award greater than the actual fees incurred against that defendant. *Jones v. Espy*, 10 F.3d 690, 691 (9th Cir. 1993) (citing *Corder v. Gates*, 947 F.2d 374 (9th Cir.1991)). (Emphasis added.)

As this Court is aware, the vast majority of the witnesses called by plaintiff to testify at trial were PHS employees. The vast majority of the testimony elicited at trial related, over this

---

[2] As this Court is aware, it is Defendants' position that Ms. Davis' speech as a public employee was not protected.

defendant's strenuous objections, to the drama of Sharon Gober, Will Turner, the union grievances, and the nurses' petition. It cannot be disputed that the vast majority of the discovery in this matter was directed toward the allegations against the PHS defendants. Plaintiff deposed PHS employees Linda Henson, Lenore Gilbert, Bill Wilson, Dr. Orr, Julie Farner, Linda Powell and Sharon Gober. During those depositions, comprising thousands of pages of testimony, defendants Ayala and Griffith were rarely discussed and then only briefly and then most often by defendants' counsel. [Ex. A to Stocker Dec.]

Since probably at least 85% of plaintiff's counsel's preparation dealt with the PHS defendants, as opposed to the County defendants, this Court should apportion 15% of the attorneys' fees to the County defendants. *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125-26 (9th Cir. 1981). The conduct of the PHS defendants was the focus of the litigation and required a larger portion of the time of plaintiff's counsel. Thus, it is appropriate to apportion the fee award accordingly. *Sable Communications of California v. Pacific Telephone & Telegraph Co.*, 890 F.2d 184, 194 (9th Cir. 1989) (district court abused its discretion when it failed to apportion the attorneys' fee award). In other words, attorneys' fees should be apportioned when the *time expended* by the plaintiff in pursuing each defendant was grossly unequal. *Corder v. Gates*, 947 F.2d at 383 (Emphasis in original, citing *Sable*, 890 F.2d at 194.)

It is improper from the standpoint of equity and common sense to hold Captain Ayala liable for the fees and costs incurred in prosecuting claims against the PHS defendants and in prosecuting unsuccessful claims against the County of Alameda and Lt. Griffith. This Court should apportion the attorneys' fees award, if any.

## VI. THE FEES SHOULD BE REDUCED BECAUSE THE SUCCESS WAS LIMITED

This Court's award of attorneys' fees under 42 U.S.C. § 1988, if any, is reviewed for an abuse of discretion. *Hensley*, 461 U.S. at 437. Any elements of legal analysis which figure in the district court's decision are, however, subject to de novo review. *Corder v. Brown*, 25 F.3d 833, 836 (9th Cir. 1994).

In the event that this Court contemplates an award of attorneys' fees to plaintiff's counsel, the



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

amount should be reduced because plaintiff's success at trial was limited. Plaintiff's initial complaint was filed in 2007. She sued seven defendants, asserted seven causes of action, and sought over a million dollars in damages. At time of trial, five defendants had been dismissed or granted summary judgment. Plaintiff pursued one cause of action at trial, prevailed against one defendant and was awarded $528,957 in damages, *subject to an offset*. Assuming that the Court grants defendant's request for an offset as to the full amount of the PHS settlement (or even just the attorneys' fees portion), plaintiff's attorneys' fees request is many times the amount of her net recovery and grossly disproportionate thereto.

Not surprisingly, plaintiff contends, without citation to authority, that "there is no requirement of a relationship between the amount of fees awarded and the number of defendants against whom plaintiff prevailed, nor the amount of damages awarded to the plaintiff." [Motion 4:21-23] This contention is untenable. In cases such as the present one, where a plaintiff brings an action against seven defendants, but manages to prevail only with regard to one, an award granting 100% of the accrued attorney's fees encourages too much litigation. *Corder v. Gates*, 947 F.2d at 379-380. While it is true that Ms. Davis succeeded in proving an alleged civil rights violation, she did so at the cost of forcing many individuals to bear the expense of defending against apparently meritless allegations. *Id*.

In fact, the U.S. Supreme Court has held that *the most critical factor* in determining the reasonableness of an attorneys' fee award is the degree of success the plaintiff achieved. *Farrar*, 506 U.S. at 114. (Emphasis added.) Where the plaintiff prevails on only some of her claims, as is the case here, special considerations come into play. First, the court should calculate the lodestar amount—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433.

The Court should conduct the reasonable fee analysis by focusing on factors justifying a reduction in the prevailing party's initial fee request, including (1) inadequate documentation; (2) a failure to exercise billing judgment (emphasized twice and broken into three sub-components of excluding hours spent on excessive, redundant or otherwise unnecessary work); (3) excluding hours spent on unsuccessful claims (emphasized twice); (4) failure to maintain a billing record enabling the



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

reviewing court to identify distinct claims; and (5) reducing fee requests for limited or partial success (emphasized four separate times in the opinion). See, *Id*. at 434-440.

This Court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Id.*, at 435. Having calculated the lodestar amount, the Court can then reduce the lodestar to reflect the plaintiff's partial success. *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987). In fact, the Court has the obligation to exclude from the calculation any hours that were not reasonably expended on the litigation. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (internal quotations omitted). Granting plaintiff a fee recovery on the claims that were dismissed before trial would be anomalous. See, *Beaty v. BET Holdings, Inc*., 222 F.2d 607, 612 (a trial court's discretion to reduce the lodestar "serves the important function of deterring the litigation of claims with little merit.") In light of these considerations, "work on unsuccessful claims cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley*, 461 U.S. at 435.

Plaintiff contends, again without citation to authority, that "after the 'lodestar' amount is calculated, it may only be adjusted downward in exceptional circumstances." [Motion 5:12-14] Such contention is without merit.

As the *Hensley* Court explained: "[i]f a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.

In civil rights litigation, "the plaintiff often may succeed in identifying some unlawful practices or conditions," but "the range of possible success is vast," and the achievement of prevailing party status alone "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* at 435. In such cases, district courts should exercise their equitable discretion to arrive at a reasonable fee award, either by attempting to identify

specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff. *Id*. at 437.

Having considered the amount and nature of damages awarded, the Court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, see *Hensley*, 461 U.S., at 430, n. 3, or multiplying "the number of hours reasonably expended ... by a reasonable hourly rate," *Id*., at 433. The Court has the responsibility to discount any "[e]xorbitant, unfounded, or procedurally defective fee applications" to ensure that the fee award is reasonable. *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990).

"Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar*, 506 U.S. at 114, citing *Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (conc. opn. of Powell, J.) Such a comparison promotes the Court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." *Id.* at 114-115. The degree of success obtained by Ms. Davis, or rather the lack of success, should persuade this Court to exercise the discretion, which 42 U.S.C. § 1988 bestows, in favor of denying or reducing attorneys' fees.

This Court has its own experience in considering the issues raised in this motion and should exercise its discretion to reduce the number of requested hours on the ground that they were not reasonably expended. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1214 (9th Cir. 1986), opinion amended on denial of reh'g, 808 F.2d 1373, (9th Cir. 1987).

If this Court is not inclined to reduce the attorneys' fees award based on plaintiff's limited success, it should state its reasons. *Corder v. Brown*, 25 F.3d 833, 837 (9th Cir. 1994).

**VII. PLAINTIFF'S FEE REQUEST IS PATENTLY UNREASONABLE**

42 U.S.C. §1988's provision allowing a "reasonable attorneys' fee" contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less. *Blanchard*, 489 U.S. at 93. "It is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case." *Id*. at 96.

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

The fee applicant has the burden to produce evidence, other than the declarations of interested counsel, that the requested rates are in accordance with those prevailing in the community for attorneys of comparable skill and reputation. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988). "[T]he burden is on the fee applicant to produce satisfactory evidence … that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 896, n. 11 (1984).

Even if there is no objection, "the district court may not uncritically accept a fee request," but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. See *Common Cause v. Jones*, 235 F.Supp.2d 1076, 1079 (C.D. Cal. 2002) (citing *Sealy, Inc. v. Easy Living, Inc*., 743 F.2d 1378, 1385 (9th Cir. 1984)); see also *McGrath v. County of Nevada*, 67 F.3d 248, 254 n. 5 (9th Cir. 1995) (noting that a court may not adopt a prevailing party's representations without conducting an independent review of the fee application).

The determination of an attorney's "reasonable hourly rate" should be based on the "market rate" for the services rendered. *Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 554–55 (7th Cir. 1999) (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996)). "An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id*. at 555 (internal citations omitted). An attorney who maintains a contingent fee practice should submit affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work. *Small v. Richard Wolf Med. Instruments Corp*., 264 F.3d 702, 707 (7th Cir. 2001). Plaintiff has submitted no declarations from attorneys as to the amounts they charge paying clients. She has submitted only declarations about how much they have been awarded.

"An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Spegon*, 175 F.3d at 556. Moreover, "while hourly rates

awarded to counsel in similar cases are evidence of an attorney's market rate, each court should certainly arrive at its own determination as to a proper fee." *Id.* at 557 (citing *People Who Care*, 90 F.3d at 1312).

In calculating the reasonable rate, the court is "entitled to rely upon its own knowledge of attorney's fees in its surrounding areas in arriving at a reasonable hourly rate." *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179, 1190 (1st Cir. 1996). Plaintiffs' counsel has not met their burden of showing that the hourly rates requested are the reasonable market rate nor do the five attorneys possess such an "unusual amount of skill, the ability to emphasize with the jury, investigative abilities, or other qualities which command a premium." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003).

**A. Price and Associate's Attorneys' Fee Request is Unreasonable**

Plaintiff seeks an award of $1,533,189 in attorneys' fees. Of that amount, she seeks $280,987.50 for the services of Pamela Price (375.65 hours at the "reduced" rate of $750 per hour); $168,360 for the services of third-year associate and former employee Jeshawna R. Harrell (420.90 hours at $400 per hour) and $84,225 for the services of second-year associate Terina Williams (224.60 hours at $375.00 per hour). Plaintiff also seeks an award of $7,299 for the services of Price and Associates' former employee, a "law school graduate," Petros Michael Abraham (erroneously identified as Petros Michael in plaintiff's motion). Price and Associates associated into this case in August, 2008 two years after the complaint was filed and was only tangentially involved in the litigation until trial.

The rates requested by the attorneys at Price and Associates are unreasonably and even shockingly high, given the current state of the economy and the relative inexperience of the associates. As set forth in the declarations of attorneys Louis A. Leone, Gregory M. Fox, Dale L. Allen, Jr., and James P. Schratz, the market rates for competent civil rights attorneys with the skills and experience of Ms. Price, Ms. Davis, Mr. Parker, Ms. Harrell and Ms. Williams are between $450.00 and $600.00 per hour, $400.00 per hour, $400.00 per hour, between $230.00 and $250.00 per hour, and between $200.00 and $225.00 per hour, respectively.

///

**1. Attorneys' Fees Requested for Pamela Price**

Plaintiff supports her request for attorneys' fees for Pamela Price with the self-serving declaration of Ms. Price, who is interested counsel. Thus, her testimony cannot be heavily weighed. *Jordan*, 815 F.2d at 1262; *Spegon*, 175 F.3d at 556. Ms. Price's declaration is largely conclusory. Ms. Price often relies on orders adopting hourly rates that were uncontested or part of a settlement. She provides little specific information.

Several cases cited by Ms. Price are insignificant and irrelevant to this case. *Walker v. Contra Costa County*, 227 F.R.D. 529 (N.D.Cal. 2005) resulted in partial summary judgment for the defendant. There was also a jury verdict in favor of the defendant. *Pierre C. v. Superior Court*, 159 Cal.App.3d 1120 (1984) involved a wardship proceeding. *Beneficial Financial Inc. v. Durkee*, 206 Cal.App.3d 912 (1988) involved a real property matter. Ms. Price lost *Jones v. K-Mart*, 17 Cal. 4th 329 (1998) in the appellate court. She then lost it in the State Supreme Court.

Plaintiff submits the declarations of William McNeill and John Burris in support of the rates sought by Ms. Price. However, Mr. McNeill and Mr. Burris regularly submit declarations for Ms. Price and/or act as co-counsel with her. Plaintiff further supports her request for attorneys' fees with a request for judicial notice by which she directs the Court's attention to declarations by James M. Finberg (July, 2009) and Bill Lann Lee (July, 2009), both of whom regularly submit declarations on Ms. Price's behalf and both of whom regularly submit declarations by Ms. Price on their behalf in attorneys' fees motions. Although these attorneys are not attorneys of record in this case, given their history of mutual, self-serving declarations, it cannot be said that they are not interested. Thus, their testimony cannot be heavily weighed. *Id*.

Additionally, the types of cases to which these attorneys refer as the bases for their opinions are not the same type of case as the instant action, i.e., the *Wynne*, the *Adams* and the *Satchell* cases to which Mr. Finberg refers were class actions. Contrary to plaintiff's representation [Motion 1:16], there is no declaration by Howard Moore. Perhaps her attorneys are again confusing this case with the *Campbell v. Amtrak* case.

As set forth in the declarations of attorneys Louis A. Leone, Gregory M. Fox, Dale L. Allen, Jr., and James P. Schratz, the market rate for competent civil rights attorneys with the skills and

experience of Ms. Price is between $450.00 and $600.00 per hour.

Ms. Price contends that suffered financially during the pendency of this action because Ms. Davis lacked sufficient funds to pay the costs of the litigation. She contends that she advanced costs of more than $10,000 to bring the case to trial. [Price Dec. ¶53, 54] However, a review of the billing records indicates that Ms. Davis was relatively consistent in paying the costs of the litigation. Additionally, Ms. Price confirmed at an evidentiary hearing in 2010 that she (and her co-counsel) not only had the resources to try a class action but were also willing to commit those resources to the case. *Berndt v. California Department of Corrections* (N.D.Cal. Dec. 16, 2010, C03-3174 VRW BZ) 2010 WL 5209384.

Ms. Price further contends that she is entitled to attorneys' fees, and at the exorbitant rate of $750 per hour, because she was unable to devote any significant time to other fee-generating activities. She contends that numerous case events had to be rescheduled and postponed. These statements are conclusory and lack evidentiary support. Ms. Price does not identify any specific hardships that arose in any specific cases due to her involvement in this one. Additionally, such is the life of a trial attorney. It is just the nature of the practice regardless of the specific circumstances.

**2. Attorneys' Fees Requested for Junior Associates**

There are <u>no</u> declarations from former employee and third-year associate, Jeshawna Harrell about her experience and skills or even what her job duties entailed in this litigation. Likewise, there is no declaration from second-year associate Terina Williams. More importantly, there are <u>no</u> declarations from non-interested counsel as to the reasonable rates for competent civil rights attorneys with the skill and limited experience of Ms. Harrell or Ms. Williams. No non-interested declarant states what the market rate is for attorneys with two or three years of experience who are primarily responsible for the organizing and tracking of documents during the litigation. Thus, plaintiff has failed to submit sufficient evidence to support the rates requested. On the other hand, defendants have submitted declarations of non-interested attorneys who state that the reasonable rates for attorneys with the limited experience of junior associates Harrell and Williams is between $230 and $250 and between $200 and $225, respectively.

///

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

**B. Price and Associates Request for Law Clerk Fees is Unreasonable**

Plaintiff requests $180 per hour for the services of a law clerk, Petros Michael Abraham. She does not provide any information as to his qualifications or skills. She does not describe the tasks for which she seeks to recover these fees. She does not provide any declarations by any non-interested persons as to the reasonable market rates for law clerks. Plaintiff fails to submit sufficient evidence to support the rate requested. She has not met her burden of proof and her request should be denied in its entirety.

**C. Price and Associates Hours are Excessive and Unreasonable**

In calculating a reasonable number of hours, the applicant must justify her claim by submitting detailed time records. The court may adjust these hours downward if the documentation is inadequate, or the hours are duplicative, excessive or unnecessary. *Chalmers*, 796 F.2d at 1210. An attorney filing a pleading in this Court certifies that the motion or other pleading is not being presented for any improper purpose, such as to harass or needlessly increase the cost of litigation. An attorney further certifies that the factual contentions have evidentiary support. Fed. R. Civ. Proc. 11. The effect of plaintiff's counsel's inclusion of excessive, unreasonable and duplicative hours was to "annoy defendants and create an unnecessary burden for both the Court and the defendants." [See, *Freitag v. CDCR*, Report and Recommendation on Plaintiff's Motion for Attorneys' Fees and Costs, Ex. B to Stocker Dec.]

For example, Plaintiff seeks to recover fees for preparation of pleadings in this case that are substantially similar to pleadings prepared by Price and Associates in other cases. For example, plaintiff seeks to recover fees of $3,510 for **4.2 hours** for Pamela Price and **.90 hours** for Jeshawna Harrell to draft, review, revise and finalize the a motion to allow use of jury questionnaire, a questionnaire and proposed order. [See, Plaintiff's billing records for July and August, 2011] However, Plaintiff's motion [Docket 96] is an almost verbatim recitation of the same motion previously filed in the matter of *Campbell v. National Passenger Railroad Corporation (Amtrak),* N.D. Cal. Case No. 4:05-cv-05434 ("Campbell"). [See Ex. C to Stocker Dec.] Only the caption and the names of the parties were changed. Thus, the claim for this activity lacks credibility and cannot

possibly be reasonable.[3]

For example, Plaintiff seeks to recover $3,262.50 for **5.75** hours for Pamela Price and **8.80** hours for Terina Williams to draft, review, revise and finalize motions *in limine*. [See, Billing records for September 12 and 13, 2011] Said motions in limine are substantially similar to the motions *in limine* filed by plaintiff in the *Campbell* case. [See Ex. D to Stocker Dec.] In fact, plaintiff's motion *in limine* number six in this case asserts that this case arises out of a "caldron of racial bias, racial discrimination and retaliation at Amtrak." The claim for this activity lacks credibility and cannot possibly be reasonable.[4]

For example, plaintiff seeks to recover **$300** for Terina Williams to read and respond to an email from defendants' counsel on the subject of the PHS settlement agreement. Based on its own experience, this Court will easily recognize that Ms. Williams could not possibly have expended nearly an hour on this activity. [See Ex. E to Stocker Dec.] The claim is neither credible nor reasonable.

For example, Plaintiff seeks to recover $1,612.50 for Terina Williams to draft, review, and revise *an ex parte application* to enlarge the time to file plaintiff's attorneys' fees motion. Not only is the time spent excessive for a simple and common application, no such pleading was required as defendants stipulated to the request. [See, Billing records for December 28 and 29, 2011]

In the case of *Freitag v. California Department of Corrections*, (N.D. Cal. Case No. 3:00-cv-02278) prominently featured in Ms. Price's Declaration, Judge Thelton Henderson was faced with a similar situation. The Court found that certain hours sought by Ms. Price and her associates were "not credible" and "either padded or completely unreasonable." [See, Order re: Parties' September 30, 2011 Joint Statement Re: Attorneys' Fees and Costs," Ex. F To Stocker Dec.] Interestingly, Ms. Price's reference to her years of involvement in the *Freitag* case does not mention this Order. Nor does she mention the fact that plaintiff's counsel was sanctioned, and her fees reduced by 25%, for failure to follow the Court's order. [See, Report and Recommendation on Plaintiff's Motion for Attorneys' Fees and Costs, Ex. B to Stocker Dec.]

---

[3] Defendants' request for the deletion of these hours during the meet and confer discussions was rejected.

[4] Likewise, defendants' request for deletion of these hours was rejected.



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

Notwithstanding Ms. Price's "attestation" that the hours recorded accurately state the time her firm spent on the case and that the time spent was reasonable, it is clear from even a cursory review of the records that the hours sought are not reasonable.

**D. Fania Davis' Fee Request is Unreasonable**

Plaintiff seeks recovery of $514,282.50 in attorneys' fees for the services provided by Fania Davis. Ms. Fania Davis seeks compensation for 761.90 hours at the billing rate of $675 per hour. Plaintiff has failed to submit sufficient evidence to support the fees requested.

For one thing, there are no non-interested declarants testifying as to whether the requested rates are in accordance with those prevailing in the community for attorneys of comparable skill and reputation. *Jordan*, 815 F.2d at 1263. For another, Ms. Davis' declaration is mostly conclusory. She gives no explanation for expending 44 hours to draft the complaint and no explanation for the hours purportedly spent in the drafting of plaintiff's declaration in opposition to defendants' motion for summary judgment when the declaration is a nearly verbatim recitation of the complaint. Additionally, Ms. Davis fails to mention that her law license was inactive for the period of January, 1989 to August, 1991.

Ms. Davis states that Ms. Freddie Davis was "forced out" of her employment. In reality, Freddie Davis walked off the job on voluntary leave. Even after she reached a settlement with PHS whereby she obtained everything she asked for, including the removal of disciplinary memos from her personnel file and the return to Housing Unit 22, she did not return to work. Fania Davis' statement that she was precluded from meeting with her client are directly contradicted by the billing records which reflect that Fania Davis met with her client for a total of 38.2 hours beginning on September 26, 2006 and continuing on a regular basis through trial.

As set forth in the declarations of attorneys Louis A. Leone, Gregory M. Fox, Dale L. Allen, Jr., and James P. Schratz, the market rate for a competent civil rights attorney with the skills and experience of Ms. Davis is $400 per hour.

There is no indication that Fania Davis complied with the meet and confer requirements of Civil Local Rule 54-5(b)(1) and in fact, she did not. The statement as to what her co-counsel may have done is insufficient and constitutes inadmissible hearsay.



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

**E. Request for Paralegal Fees is Unreasonable**

There is no declaration from anyone, interested or not, about the basis for the claim of $18,000 for the services of a purported paralegal (identified elsewhere as Janice Lukas) at $180.00. There is nothing about her training or licensing or level of experience. As set forth in the declarations of attorneys Louis A. Leone, Gregory M. Fox and James P. Schratz, the market rate for paralegals is $100 to $125 per hour.

There are vague references to the tasks Ms. Lukas performed, such as indexing case documents and preparation of trial exhibits, most of which are clerical and non-recoverable. Rather than billed to clients, this type of work generally is subsumed in or covered by an attorney's hourly rate, just like any other overhead expense, such as utilities and office supplies. *Leuzinger v. County of Lake* (N.D. Cal., Mar. 30, 2009, C 06-00398 SBA) 2009 WL 839056.

Further, the tasks are duplicative. Price and Associates' billing records reflect that deposition summaries of Griffith's deposition were done by an outside entity in May, 2010 and November, 2010. And yet, plaintiff seeks to recover for more than twenty hours for Ms. Lukas to read and summarize Griffith's deposition, up until the first day of trial. These hours are duplicative, excessive and unnecessary. Plaintiff has failed to submit sufficient evidence to support the rates or fees requested for this paralegal. These fees should be reduced to zero.

**F. Darryl Parker's Fee Request is Unreasonable**

Plaintiff seeks recovery of $460,035 in attorneys' fees for the services provided by Darryl Parker. Mr. Parker seeks compensation for 613.38 hours at the billing rate of $750 per hour. Plaintiff has failed to submit sufficient evidence to support the fees requested. For one thing, there are no non-interested declarants testifying as to whether the requested rates are in accordance with those prevailing in the community for attorneys of comparable skill and reputation. *Jordan*, 815 F.2d at 1263.

For another, Mr. Parker's declaration is mostly conclusory. He relies on orders adopting hourly rates that were uncontested or part of a settlement. He provides little specific information. The cases cited by Mr. Parker in paragraph five of his declaration are insignificant and irrelevant to this case. *Byrd v. Blanton*, 149 Cal.App.3d 987 (1983) was a landlord tenant matter; *Pettus v. Cole*, 49



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

Cal.App.4th 402 (1996) involved claims of right to privacy of medical information, breach of contract, and unlawful termination; *Fredenburg v. Contra Costa County*, 172 F.3d 1176 (9th Cir. 1999) was an ADA case; *Watts v. County of Sacramento*, 256 F.3d 886 (9th Cir. 2001) was a Fourth Amendment case. In *Watts*, Judge David F. Levi in the Eastern District limited Mr. Parker's attorneys' fees to $250 per hour.

Mr. Parker indicates that he has developed a specialty in Section 1983 litigation and Title VII law, presumably in support of the generous billing rate requested. However, specialization does not necessarily justify a premium billing rate and more is needed to demonstrate that the implied expertise merits premium compensation. Regardless, all practitioners are bound to a reasonableness standard in setting their billing rates. As set forth in the declarations of attorneys Louis A. Leone, Gregory M. Fox, Dale L. Allen, Jr., and James P. Schratz, the market rate for competent civil rights attorneys with the skills and experience of Mr. Parker is $400.00 per hour.

Mr. Parker claims that he provided input on what witnesses were to be deposed. As previously noted, the majority of the witnesses deposed and/or called to testify at trial were PHS employees (past and/or present) and had little, if anything, to say about Captain Ayala.

Mr. Parker claims that he expended several thousands of dollars in litigating this matter and in travel expenses. He provides no evidentiary support for this claim. Additionally, it was Mr. Parker's decision to litigate in both Washington State and California. He is not entitled to a premium for that decision. Nor is he entitled to recover attorneys' fees for the time that he spent traveling to and from his homes in Seattle and Oakland.

**G. Darryl Parker's Billing Practices are Deficient**

Darryl Parker's billing records reflect numerous billing entries in 0.25 increments. Billing "by the quarter-hour, not by the tenth" is a "deficient" practice "because it does not reasonably reflect the number of hours actually worked." See *Zucker v. Occidental Petroleum Corp.*, 968 F.Supp. 1396, 1403 (C.D. Cal. 1997) (demonstrating that attorney with $300 hourly rate who works 6 minutes on a matter would charge $30 if he bills by the tenth of an hour and $75 if he bills by the quarter hour). Consequently, this Court should reduce the fee award by a percentage to account for the unearned increment based on quarter-hour billing. *Lopez v. San Francisco Unified School Dist.*



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

385 F.Supp.2d 981, 993 (N.D. Cal. 2005).

**H. The Entire Fee Request is Unreasonable in this Economy**

None of plaintiff's attorneys seems to recognize the financial reality of the current economy, except for Fania Davis' lament about the difficulty in winning a significant verdict against public entities or public officials when public entities are operating at extreme deficits and going bankrupt. [Fania Davis Dec. ¶20] Obviously, the irony escapes her.

In calculating the reasonable rate, the court is "entitled to rely upon its own knowledge of attorney's fees in its surrounding areas in arriving at a reasonable hourly rate." *Andrade*, 82 F.3d at 1190. The Court should be aware of real-world billing practices when it employs the "prevailing rate in the community. *Jordan*, 815 F.2d at 1262. As noted by Judge Henderson in the *Freitag* case, there has been a general resistance to the escalation in hourly billing rates. [Citations omitted.]

As set forth in the Declaration of Attorney Gregory M. Fox, he is surprised at the legal fees being requested by the attorneys are surprising given that their fee rates have apparently increased dramatically over the past several years while the economy has been in a Great Recession. Both private companies and public entities have dramatically cut back and/or reduced their financial operations given a lack of funding. Salaries have been frozen and wages have been reduced, including those of attorneys. Mr. Fox has not increased his billing rates to his public entity clients for the past three years. [Fox Dec. ¶10.]

As set forth in the Declaration of Attorney Louis A. Leone, public entities are often placed in a "Hobson's Choice" when sued for the violation of civil rights. That choice is to litigate through trial and hope that they secure an outright victory or settle cases that have no merit under the threat of being assessed attorneys' fees at the rates sought by Ms. Price and her colleagues. In Mr. Leone's experience, attorneys often use the threat of their attorneys' fees to pressure cash strapped public entities into settling cases that should otherwise go to trial because they lack merit. Simply stated, the risk becomes too great to try cases when the downside risk is an award of attorneys' fees at rates higher than most board certified surgeons charge. In that regard, awarding attorneys' fees in the amounts requested by Ms. Price and her colleagues allows the threat of attorneys' fees to be raised to a level even higher than currently exists. [Leone Dec. ¶20]

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

## VIII. THE FEES SHOULD BE REDUCED DUE TO IMPROPER BILLING

The Court should exercise its authority to reduce hours that are billed in block format. Plaintiff bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 948 (9th Cir. 2007). It is reasonable for the Court to conclude that plaintiff failed to carry her burden because block billing makes it more difficult to determine how much time was spent on particular activities. *Id*. Block billing played a significant role in the billing records of both the Price law firm and Attorney Parker and, to a lesser extent, in the records of Attorney Davis. Thus, the fees merit careful review and reduction. See, Declaration of James P. Schratz.

Billing records ought to provide: "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *United Slate, Tile & Composition v. G&M Roofing*, 732 F.2d 495, 502 n.2 (6th Cir. 1984). Attorney Parker's entries are particularly vague. In fact, they are so generic that they could relate to almost *any* case. Where, as here, billing records are vague and lack specificity, a reduction in fees may be appropriate. *Lafever v. Acosta, Inc*. (N.D. Cal., Nov. 8, 2011, C10-01782 BZ) 2011 WL 5416650. See, Declaration of James P. Schratz.

## IX. THE FEES SHOULD BE REDUCED FOR OVERSTAFFING, DUPLICATION, AND EXCESSIVE CONFERENCING

Based on the backgrounds and experience of plaintiff's counsel, as detailed in their motion for fees, these attorneys are qualified and experienced litigators in the field who are seeking hourly rates at the top end of the scale for such work. It would therefore be expected that each would be able to handle such matters on his or her own without the excessive involvement of multiple attorneys.

The number of attorneys present every day at trial was unnecessary and excessive. Total billing for the eleven days of trial was substantial. Fania Davis billed 83.3 hours and $33,320.00 fees (adj ); Darryl Parker, 161.25 hours and $64,500.00 fees (adj). Pamela Price billed 108.0 hours and $64,800.00 fees (adj); and, Price associate Terina Williams billed 74.00 hours and $16,650.00 fees (adj). Altogether, the four attorneys billed a combined total of 426.55 hours and $179,270.00 fees

(adj) over the eleven days of trial. In addition, there was significant trial preparation by all four attorneys in anticipation of attending and participating in the trial. There was no apparent need for the excess staffing and the excess is very costly. Despite the protests of plaintiff's counsel that they have been vigilant to avoid duplication, attendance by four attorneys at trial, not to mention all the trial preparation, is in fact duplicative work and duplicative billing. The attorneys' fees for appearing at trial, and preparing for trial, should be substantially reduced. See, Declaration of James P. Schratz.

The billing records reflect a very significant amount of conferencing among all the lawyers and staff. Excessive conferencing tends to produce excessive billing and that will unfairly burden and inflate fees. The total amount of billing for conferencing should be reduced. See, Declaration of James P. Schratz.

**X. NON-STATUTORY COSTS**

Plaintiff seeks reimbursement of $39,878.50 in non-statutory costs. [Motion 13:4-5] Her reliance on *Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240 (9th Cir. 1982) is misplaced because that judgment was vacated. 461 U.S. 952 (1983). The amount of the claimed costs is not supported by the records submitted by plaintiff in this case. In fact, the amount of costs is identical to the amount sought by plaintiff in the *Campbell v. Amtrak* case.

Plaintiff is not entitled to costs on the same grounds that she is not entitled to attorneys' fees, i.e., the litigation served no public purpose, plaintiff achieved limited success, this defendant was not the focus of her case, and the cost request is unreasonable, duplicative, and constitutes double dipping.

Assuming that plaintiff is entitled to an award of costs, the amount must be substantially reduced. Plaintiff has submitted a "Slip Summary" in support of her claim for costs. [Ex. I to Price Dec.] First, the slip summary is completely devoid of any description or detail as to the nature of the claimed costs. The request for costs should be denied on this basis alone. Second, plaintiff seeks recovery of cost items that were identified in her cost bill and which have been taxed by the Court clerk. For example, plaintiff identifies "Court Reporter" costs of $15,970. These costs were taxed in the amount of $14,235.53. Plaintiff seeks to recover for unidentified "Document costs" of $412 and "Photocopy" costs of $4,848. These costs were taxed in the amount of $435.11. Plaintiff identifies



ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

"Process server" costs of $249. These costs were taxed in the amount of $399. Plaintiff seeks "Witness Fees" in the amount of $11,656. She claimed witness fees of $451 in her cost bill and was taxed in the amount of $250.

Of greater significance, the bulk of plaintiff's request for "witness fees" is actually for "expert fees" which she is not entitled to recover. A review of Price and Associate billing records indicate that plaintiff paid expert fees as follows: Dr. Palfin: 7/29/11 $3937.50; 9/12/11 $262; 12/8/11 $1,005; Dr. Kaufman: 9/23/11 $1,000; Dr. Lipian: 9/26/11 $1,400; Dr. Jenkins-Monroe: 12/14/11 $3,600. Plaintiff contends that the Civil Rights Act of 1991 gives the court the discretion to award expert witness fees as part of the attorneys' fees. Plaintiff is mistaken. Plaintiff cannot, as a matter of law, recover expert witness fees in this § 1983 action. *Ruff v. County of Kings*, 700 F.Supp.2d 1225, 1243 (E.D. Cal. 2010) (Section 1988(c) does not apply to a Section 1983 action.) Plaintiff's disingenuous attempt to identify expert fees as witness fees should not be tolerated. The entire amount should be disallowed.

Plaintiff seeks to recover $9,928.83 for "miscellaneous costs." This sum is significant. The costs included in this broad category should be specifically identified. Since there is no information upon which the court may determine whether these costs are, in fact, recoverable the claim should be disallowed.

Plaintiff seeks recovery of "long distance telephone charges" (LDTC) of $115.28. She does not explain why she would be entitled to same or how such charges would apply to telephone calls over the great distance between Hayward and Oakland. Plaintiff seeks recovery of Express Mail, Federal Express and Messenger fees without any explanation as to why these costs were necessary. Plaintiff seeks recovery of Mileage ($52.40), Postage ($311.53), Tolls and Parking ($487.61) and Travel Expense ($456.77). Again, plaintiff fails to provide any explanation or justification for these costs and they should be disallowed.

If the Court is inclined to grant plaintiff's request for costs, as to the costs she may be entitled as a matter of law and which have not already been taxed, the total amount awarded should be reduced by at least 85% to reflect the fact that the focus of plaintiff's case was the PHS defendants and the bulk of these costs are attributable to plaintiff's prosecution of the case against PHS.

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

**XI. CONCLUSION**

For the foregoing reasons, this Court should not award any fees or costs because to do so would produce a windfall to plaintiff and her many counsel. Alternatively, the court should reduce the rates that plaintiff's attorneys seek because the rates and hours are unreasonable, because the litigation served no public purpose, because Captain Ayala was not the focus of plaintiff's case and because plaintiff's success was limited. This Court should make reductions for block billing, excessive conferencing, unsuccessful claims and other reasons identified in the Declaration of James P. Schratz. Finally, this Court should deny non-statutory costs because they are inadequately documented, are not recoverable, have already been taxed and, as to expert fees, are not allowed as a matter of law.

Respectfully submitted,

Dated: March 5, 2012.

ANDRADA & ASSOCIATES

By *\/s/ Lynne G. Stocker*

LYNNE G. STOCKER
Attorneys for Defendants
COUNTY OF ALAMEDA,
CAPTAIN JAMES E. AYALA, and
LIEUTENANT DARRYL GRIFFITH