United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE M. DAVIS, | No. C 09-2629 SI |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANT'S MOTION FOR CREDIT ON THE JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST; DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS; AND GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| PRISON HEALTH SERVICES, *et al.*, | |
| Defendants. | |
| _____/ | |

Now before the Court are various post-trial motions.  For the reasons set forth below, defendant's motion for credit on the judgment is GRANTED IN PART; plaintiff's motion for prejudgment interest is GRANTED; defendants' motion for attorneys' fees and costs is DENIED; and plaintiff's motion for attorneys' fees and costs is GRANTED IN PART.

**BACKGROUND**

Plaintiff Freddie Davis, an African-American woman, is a licensed vocational nurse who began working at Santa Rita Jail in Alameda County in 1990. Plaintiff was an employee of Prison Health Services ("PHS"), with whom Alameda County ("the County") contracted to provide nursing services at the jail.  In 2006, plaintiff complained that PHS's Director of Nursing, Linda Henson, demonstrated a pattern of racist and sexist behavior at work, including telling racist jokes in her presence and directing racist and sexist comments towards plaintiff.  Plaintiff also complained that her PHS supervisor, Sharon Gober, was unprofessional and abusive.

By March 2006, plaintiff joined other nurses and employees in signing a petition protesting Gober's conduct.  In April 2006, plaintiff co-chaired a meeting about the petition with PHS management

United States District Court
For the Northern District of California

and defendant Captain Ayala from the County Sheriff's Department. At the meeting, Ayala threatened to revoke the protesting nurses' security clearances, and in response plaintiff said she would report Ayala to the undersheriff. In the wake of the nurses' petition and resulting meetings, plaintiff complained that Henson and defendant Lieutenant Griffith (of the County) harassed plaintiff.

In May 2006, Ayala wrote a memorandum to a PHS administrator detailing inappropriate behavior by plaintiff. In June 2006, Ayala wrote a memorandum to the Sheriff recommending that plaintiff's security clearance be revoked. Plaintiff's clearance was not revoked, and plaintiff claimed that Ayala told her in a June 2006 meeting even though he couldn't pull her site clearance, "PHS will take care of you."

In July 2006, plaintiff was transferred to Housing Unit 9 at the jail, which was the mental health unit. Plaintiff considered Housing Unit 9 the worst place to work at the jail, and plaintiff claimed that Ayala and PHS conspired to transfer her. Plaintiff claimed that after her transfer to Housing Unit 9, the harassment by PHS employees Ayala and Griffith escalated. In August 2006, Henson issued plaintiff a disciplinary warning threatening punishment up to and including termination. Plaintiff claimed that the issues caused her severe emotional stress, and her physician and psychologist ordered her to take medical leave.

On April 4, 2007, plaintiff filed a complaint in state court against PHS, Henson, two other PHS employees, the County, Ayala, and Griffith. Docket No. 1, Ex. A. The complaint alleged the following claims: (1) hostile work environment and discrimination based on race, color, national origin and gender under California's Fair Employment Housing Act ("FEHA"), against PHS; (2) failure to prevent unlawful discrimination and harassment under FEHA, against PHS; (3) retaliation under FEHA, against all defendants; (4) violation of free speech and associational rights under the California Constitution, against all defendants; (5) violation of civil rights while in employment under the California Constitution, against all defendants; and (6) aiding and abetting conduct forbidden by FEHA, against the County, Ayala and Griffith.

United States District Court
For the Northern District of California

Plaintiff filed a first amended complaint in August 2007,[1] and a second amended complaint on May 14, 2009. *Id.* Ex. B & F. The second amended complaint alleged the following claims: (1) hostile work environment and discrimination based on race, color, national origin and gender under FEHA, against PHS and PHS employees; (2) failure to prevent unlawful discrimination and harassment under FEHA, against PHS; (3) retaliation under FEHA, against PHS and PHS employees; (4) aiding and abetting conduct forbidden by FEHA, against the County, Ayala and Griffith; (5) deprivation of First and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, against all defendants; (6) deprivation of civil rights (race, gender, national origin) pursuant to 42 U.S.C. § 1983, against all defendants; and (7) conspiracy to deprive plaintiff of her civil rights pursuant to 42 U.S.C. §§ 1983 and 1985, against all defendants. On June 12, 2009, defendants removed this case to federal court on the basis of the newly alleged federal claims.

On May 6, 2011, plaintiff and the PHS defendants filed a stipulated dismissal with prejudice. Plaintiff settled with the PHS defendants for $375,000.[2] According to plaintiff, as part of the agreement, plaintiff agreed to dismiss her claims against the PHS defendants and resign from her job immediately. Plaintiff states that she received $25,000 in consideration for confidentiality and $25,000 to cover her health care premiums. Plaintiff represents that the agreement states that the settlement did not affect any of plaintiff's claims against the County defendants.

The County defendants then filed a motion for summary judgment. The Court granted summary judgment in favor of the County, granted summary judgment in favor of Ayala and Griffith on the aiding and abetting retaliation and discrimination claim, and denied summary judgment on all other claims. *See*

---

[1] The first amended complaint alleged the following claims: (1) hostile work environment and discrimination based on race, color, national origin and gender under FEHA, against PHS and PHS employees; (2) failure to prevent unlawful discrimination and harassment under FEHA, against PHS; (3) retaliation under FEHA against PHS and PHS employees; (4) violation of free speech and associational rights under the California Constitution against all defendants; (5) violation of civil rights while in employment under the California Constitution against all defendants; and (6) aiding and abetting conduct forbidden by FEHA, against all defendants.

[2] The settlement agreement has not been provided to the Court. Plaintiff provided information about the terms of the settlement agreement, as well as the amount of the settlement, in the opposition that she filed to defendant's motion for credit on the judgment, which was filed under seal. This order discusses the terms and amount of that settlement because it is necessary in order to rule on defendant's motion for credit on the judgment.

3

*generally* Docket No. 94.

A jury trial was held from November 28, 2011 to December 15, 2011.  Prior to trial, plaintiff dismissed her remaining FEHA and § 1983 race and gender discrimination claims against Ayala and Griffith.  Plaintiff proceeded to trial on her § 1983 First Amendment retaliation claim, as well as her claim that Ayala and Griffith conspired with PHS to deprive plaintiff of her First Amendment rights.  During the jury instruction conference, plaintiff decided to dismiss the conspiracy claim, and thus only the § 1983 First Amendment retaliation claim was submitted to the jury.  The jury found against plaintiff on her retaliation claim against defendant Griffith, but found that plaintiff had proven that defendant Ayala retaliated against her for the exercise of her First Amendment rights.  The jury awarded plaintiff $528,957 in damages, consisting of $320,157 in back pay, $8,800 in medical expenses, and $200,000 for non-economic damages.

Now before the Court are defendant Ayala's motion for credit on the judgment, plaintiff's motion for prejudgment interest on the back pay award, the County and Griffith's motion for fees and costs, plaintiff's motion for fees and costs, and plaintiff's motion to strike the declaration of defendant's fee auditor, James Schratz.

## DISCUSSION

### I.    Defendant's motion for credit on the judgment

Defendant Ayala contends that he is entitled to a credit on the judgment in the full amount of the settlement paid by PHS.  Defendant argues that plaintiff's central theory in this case, as alleged in the second amended complaint and at trial, was that defendants Ayala and Griffith conspired with the PHS defendants to retaliate against plaintiff.  Defendant contends that plaintiff "claims only one injury, and since she may recover only once for that injury, any settlements made before trial were in satisfaction of that injury."  Docket No. 213 at 2:4-6.

Plaintiff objects to an offset on numerous grounds. Plaintiff argues that defendant has failed to show that the settlement and jury award were for the same injury or that defendants Ayala and PHS were joint tortfeasors. Plaintiff argues that the PHS settlement encompassed separate and distinct race and gender discrimination claims that were not tried to the jury.  Plaintiff also argues that in consideration

4

for the PHS settlement payment, she agreed to immediately tender her resignation.  Plaintiff emphasizes the fact that the settlement agreement states that the settlement does not settle or affect any claims plaintiff had against defendant.

Alternatively, plaintiff argues that if the Court is inclined to award an offset, fairness principles require the Court to take into consideration the following factors: (1) plaintiff paid 40% of the PHS settlement to her attorneys for attorneys' fees; (2) the PHS settlement included a $25,000 payment for the confidentiality provision contained in the agreement; (3) the PHS settlement included a payment of $25,000 to cover plaintiff's health care premiums; (4) a "large part" of the settlement agreement went towards compensating plaintiff for her agreement to immediately resign her employment; and (5) to the extent that the PHS settlement and damages award overlap, they overlap on only one of six claims (the First Amendment retaliation claim) alleged against PHS at the time the settlement was executed.

Courts have held that a settlement may be credited against a non-settling defendant's liability where the settlement and damage award cover common damages. In *Miller v. Apartments and Homes of New Jersey, Inc*., 646 F.2d 101 (3d. Cir. 1981), the Third Circuit held that "in federal civil rights cases, where one or more defendants have settled with a plaintiff, the damages recoverable by that plaintiff shall be reduced by the amount of the settlement received."  *Id*. at 110 (awarding offset in § 1983 case as a matter of federal common law); *accord Hoffman v. McNamara*, 688 F. Supp. 830, 834 (D. Conn. 1988) (holding non-settling defendants entitled to offset in § 1983 case based on Connecticut law); *Goad v. Macon County, Tenn.*, 730 F. Supp. 1425, 1426-27 (M.D. Tenn. 1989) (awarding offset in § 1983 case based on Tennessee law).  Although the Ninth Circuit has not yet addressed whether a non-settling defendant is entitled to an offset of damages based on a settlement, the Ninth Circuit has held in a § 1983 case that a defendant is entitled to an offset for the attorney's fees already paid to a plaintiff by a settling defendant. *See Corder v. Brown*, 25 F.3d 833, 839-40 (9th Cir. 1994) (discussing *Miller* and *Hoffman* with approval). Defendant has the burden of showing that he is entitled to an offset. *Velez v. Roche*, 335 F. Supp.2d 1022, 1042 (N.D. Cal. 2004).

United States District Court
For the Northern District of California

The Court concludes that, whether as a matter of federal common law or California law,[3] a partial offset is appropriate to avoid a duplicative recovery by plaintiff. The Court agrees with plaintiff that a full offset is not warranted because the race and sex discrimination claims were not tried to the jury. However, the structure of the trial, during which plaintiff called numerous PHS witnesses, was predicated on plaintiff's claim that PHS, Ayala and Griffith conspired to retaliate against her – for differing reasons – for the exercise of her First Amendment rights. Although plaintiff decided to dismiss her conspiracy claim prior to the case going to the jury, plaintiff's theory throughout the trial was that PHS and the Sheriff Department employees engaged in a concerted campaign of harassment and retaliation. Indeed, the Court notes that plaintiff's motion for attorneys' fees against defendant Ayala, in arguing that plaintiff is entitled to recover for her time spent litigating all claims against all defendants, asserts "Here, after Ms. Davis exercised her First Amendment right to speak out against what she perceived to be unwarranted treatment of herself and her fellow nurses, a plan ensued to force Ms. Davis out of her job. While there were different motivations on the part of different participants (*i.e.*, some race related and some in retaliation for Ms. Davis' speech), the activities that ensued arose out of 'one densely interconnected set of events' and the 'litigation represented a seamless web.'" Docket No. 287 at 4:24-5:2 (Docket No. 287). The fact that plaintiff sought, and the jury awarded, back pay against Ayala further demonstrates the common nature of the injury claimed by plaintiff.

Plaintiff contends that an offset is improper because "as to Defendant Ayala, the jury was instructed to award damages only for the conduct attributable to him." Docket No. 306 at 5:27-28. Plaintiff asserts "[t]hat the jury only considered conduct by Defendant Ayala in reaching its verdict is also important because as the Ninth Circuit noted in *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1231 (9th Cir. 1989), it is the jury that determines both the total dollar amount of damages and the proportionate liability of all defendants – settling and non-settling. Given that the jury did not take into account the

---

[3] *See* Cal. Code Civ. Proc. § 877(a) ("Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect: (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater.").

United States District Court
For the Northern District of California

actions of the PHS Defendants in returning its verdict against Defendant Ayala, it simply cannot be appropriate to offset the jury's damage award by the PHS settlement." Docket No. 306 at 6:10-15.

Plaintiff's argument about the jury instruction both mischaracterizes the instruction given, and curiously ignores the fact that the instruction given to the jury regarding damages and the PHS settlement was the very one proposed by plaintiff. The Court gave the following instruction to the jury:

**EVIDENCE OF SETTLEMENT**

You have heard evidence that there was a settlement between plaintiff and Prison Health Services. You must not consider this settlement to determine responsibility for any harm. You may consider this evidence to decide whether the Prison Health Service employees are biased or prejudiced and whether their testimony is believable.

If your verdict is for plaintiff in this lawsuit, then you are to award her the entirety of the damages you find. If you award damages in this case, you are not to consider or make adjustments for the fact that plaintiff's suit against PHS was settled. You are to award damages to compensate plaintiff for all of the harm you find she has suffered. The Court will make appropriate adjustments to your award to reflect any damages plaintiff may have already received.

Docket No. 182 at 15:19-28. This is almost verbatim the instruction proposed by plaintiff in both of her jury instruction submissions. *See* Docket No. 172 at 2 (Plaintiff's jury instruction no. 8.1 "Evidence of Settlement (revised)"); Docket No. 178 at 10 (same). Contrary to plaintiff's assertions, the jury was not instructed to award damages only for the conduct attributable to defendant Ayala. Instead, the jury was specifically instructed that if it awarded damages, it was not to consider or make adjustments for the fact that plaintiff's suit against PHS was settled, and that "You are to award damages to compensate plaintiff for *all* of the harm you find she has suffered." Docket No. 182 at 15: 26-27 (emphasis added). The instruction explicitly contemplated that the Court would adjust the damages award, if necessary, to account for any damages plaintiff had received in the PHS settlement.[4]

The Court finds that principles of fairness mandate an offset of $200,000 against the jury's $320,157 back pay award. An offset against the back pay award, as opposed to the entire damages award, is appropriate because the back pay award meets the requirement of common damages as the jury

---

[4]   To the extent that plaintiff now contends that the jury should have determined the proportionate liability of the PHS defendants, plaintiff has waived that argument by never previously asserting it and by proposing the jury instruction that the Court adopted. *See Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1492 (9th Cir. 1986).

held Ayala liable for causing plaintiff to leave her job, while plaintiff's claims against PHS, her employer, alleged that PHS and Ayala conspired to retaliate against plaintiff, forcing plaintiff to leave her job.  In contrast, defendant has not met his burden to show that the amounts awarded by the jury for medical expenses and non-economic damages constitute common damages.

The Court arrives at the $200,000 offset as follows:

- The PHS settlement was $375,000

- Plaintiff received 60% of the settlement ($225,000) because her attorneys received 40% of the settlement pursuant to their fee agreement.  The Court finds it appropriate to address the offset of the attorneys' fees in connection with plaintiff's motion for attorneys' fees, rather than in connection with the damages.  Accordingly, the amount of the PHS settlement available for the damages offset becomes $225,000

- In the PHS settlement, plaintiff received $25,000 to cover health care premiums.  This part of the agreement is separate and distinct from the damages awarded by the jury.  A deduction for these premiums leaves $200,000 applied to the offset.

The Court is unpersuaded by plaintiff's arguments that additional amounts, such as $25,000 for confidentiality or a deduction for plaintiff's resignation, should be deducted before applying an offset.  In addition, to some extent, the Court has taken those considerations into account by limiting the offset to the back pay award, rather than the entire damages award.

Accordingly, the Court GRANTS IN PART defendant's motion for a credit on the judgment, and finds that the jury's back pay award should be reduced by $200,000, with an adjusted back pay award of $120,157, and adjusted total damages award against defendant Ayala of $328,957.

## II.    Plaintiff's motion for pre-judgment interest

Plaintiff requests that the Court award her pre-judgment interest on the back pay award.  The Ninth Circuit has not articulated the standard for awarding pre-judgment interest in Section 1983 cases.  *Murphy v. City of Elko*, 976 F. Supp. 1359, 1361 (D. Nev. 1997).  However, the Ninth Circuit has held that pre-judgment interest is an element of compensation and is not a penalty.  *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1288 (9th Cir.1984).  "Whether interest will be

1  awarded is a question of fairness, lying within the court's sound discretion, to be answered by balancing

2  the equities." *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir.1971).

3      The Court exercises its discretion and finds that an award of pre-judgment interest on the

4  reduced back pay award of $120,157 is required to compensate plaintiff for the time value of her lost

5  wages.  Defendant's arguments in opposition to such an award are unpersuasive for the reasons stated

6  in plaintiff's opposition papers.

7      Plaintiff asks the Court to use an interest rate of 5.07%, which was the effective rate at the time

8  that plaintiff left her employment.  The post-judgment interest rate "should be applied to pre-judgment

9  interest 'unless the trial judge finds, on substantial evidence, that the equities of a particular case require

10  a different rate.'" *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986).  The post-judgment rate is set by

11  reference to 28 U.S.C. § 1961 ("interest shall be calculated from the date of the entry of the judgment,

12  at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board

13  of Governors of the Federal Reserve System, for the calendar week preceding. [sic] the date of the

14  judgment.").  The applicable interest rate under this statute is 0.11%.  The Court finds that the use of

15  the current federal interest rate would, in effect, deny plaintiff prejudgment interest, and that the equities

16  of this case require the application of the rate in effect at the time plaintiff left her job, August 25, 2006,

17  which is 5.07%.  Accordingly, plaintiff's motion for pre-judgment interest is GRANTED.

18

19  **III.    Defendants' motion for attorneys' fees**

20      The County and defendant Griffith move for attorneys' fees and costs pursuant to 42 U.S.C.

21  § 1988 and California Government Code § 12965(b).  These defendants contend that they are entitled

22  to fees because they prevailed on all of plaintiff's claims alleged against them.

23      A prevailing defendant is entitled to fees under either statute "only 'in exceptional

24  circumstances' in which the plaintiff's claims are 'frivolous, unreasonable or without foundation.'"

25  *Harris v. Maricopa County Superior Court*, 631 F.3d 963, 968 (9th Cir. 2011); *Bond v. Pulsar Video

26  Productions*, 50 Cal. App. 4th 918, 921-22 (1996); *see also Christiansburg Garment Co. v. EEOC*, 434

27  U.S. 412, 422 (1978).  "Fees may be awarded only for frivolous claims, and a defendant bears the

28  burden of establishing that the fees for which it is asking are in fact incurred solely by virtue of the need

to defend against those frivolous claims." *Harris*, 631 F.3d at 972.

The Court concludes that defendants have not shown that they are entitled to fees and costs. Although plaintiff did not prevail on her claims against the County and defendant Griffith, defendants have not demonstrated that the unsuccessful claims were frivolous or groundless. In addition, plaintiff dismissed a number of claims against defendant Griffith either prior to the trial or during the trial, and as to those claims defendant Griffith has not shown that he is a prevailing party. The Court agrees with plaintiff that the law as to whether individuals could be held for acts of retaliation and discrimination under FEHA was not well established at the time plaintiff's complaint was filed in 2007. Further, the fact that the Court rejected certain of plaintiff's legal theories does not, as defendants contend, establish that plaintiff's claims were unreasonable. *See Christiansburg*, 434 U.S. at 421-22 ("[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."). Accordingly, defendants' motion is DENIED.[5]

---

[5] Plaintiff seeks her fees and costs associated with litigating defendants' motion for fees. Plaintiff's counsel have not specifically identified the time associated with opposing defendants' motion, as opposed to the time they spent litigating plaintiff's fee motion. For example, the second supplemental declaration of Mr. Parker states that since the filing of plaintiff's motion for fees, he expended a total of 28.8 hours in "this matter," and he attaches as Exhibit A to that declaration his billing records for that time. Exhibit A includes time entries related to both plaintiff's motion for fees as well as defendants' motion for fees, as well as numerous time entries that are so vague that the Court cannot determine to which fee motion the entries relate. *See, e.g.*, Docket No. 303, Ex. A ("Email from co-counsel Williams" and "Teleconference with co-counsel"). Plaintiff has not provided the Court with any authority for the proposition that she is entitled to recover her fees for time spent litigating defendants' motion for fees. The Court concludes that because plaintiff did not prevail in her claims against the County and Griffith, that she should not recover her fees for time spent litigating the fee motion filed by those defendants.

United States District Court
For the Northern District of California

**IV.     Plaintiff's motion for attorneys' fees and costs**

Plaintiff seeks at least $1,533,189.00 in fees[6] and $18,638.37[7] in costs pursuant to 42 U.S.C. § 2000e-5(k). The fee shifting provisions in 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988 are identical, and thus analysis under § 1988 case law is appropriate. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Hanrahan v. Hampton*, 446 U.S. 754, 758, n.4 (1980).

**A.     Entitlement to fees**

Defendant Ayala contends that plaintiff should not receive any attorneys' fees because this litigation served no public purpose. Defendant asserts that "by obtaining a damage award against Captain Ayala, plaintiff did nothing to stimulate compliance with the law. She obtained no injunction. No conduct to be deterred is apparent from the verdict. The verdict did not result in any change to either Captain Ayala's behavior (he retired before the verdict) or the policies of the County of Alameda Sheriff's Department. Plaintiff's job was not reinstated. There is no indication that plaintiff's suit will benefit other PHS employees and/or employees in general." Docket No. 273 at 4:2-7.  Defendant asserts that "plaintiff's purported civil rights action for damages constitutes nothing more than a private tort suit benefitting only the individual plaintiff whose rights were allegedly violated." *Id.* at 4:11-13.

A court may decide not to award attorneys' fees where special circumstances would render such an award unjust. *Hensley*, 461 U.S. at 429. "[A] court's discretion to deny fees under § 1988 is very narrow and [] fee awards should be the rule rather than the exception." *Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir.1989) (internal quotations omitted). "The defendant has the burden of showing special circumstances warrant a denial of fees, and the defendant's showing must be a strong

---

[6] During the course of briefing the various post-trial motions, plaintiff's counsel filed numerous supplemental declarations reflecting their time spent on the post-trial motions. Plaintiff's counsel did not file a single document totaling all of the time spent on plaintiff's fee motion, and the Court finds that the piecemeal presentation of the "fees on fees" requested is confusing and unhelpful to the Court. As directed in the conclusion of this order, the Court orders plaintiff's counsel to file a single, final declaration recalculating the fees in conformity with this order, including the time spent on the fee motion.

[7] During the course of briefing plaintiff's motion for fees and costs, plaintiff reduced the cost request to exclude the amount of costs taxed by the Clerk and to eliminate the amounts paid to experts, which plaintiff concedes are not recoverable.

one." *Id.* at 744.

The Court concludes that defendant has not met his burden of demonstrating that special circumstances warrant the complete denial of fees. The Ninth Circuit has rejected the argument "that a fee award is unjust because the [plaintiffs] were motivated to sue primarily by an expectancy of personal financial gain rather than a desire to promote constitutional rights and because the [plaintiffs], rather than the public at large, are the main beneficiaries of the success of their lawsuit." *Id.* "[P]ublic interests are advanced by civil rights actions even when the plaintiff is the main beneficiary of the suit and financial gain is the primary motive because a major goal of § 1988, encouraging voluntary compliance with the Constitution by governmental entities, is furthered regardless of these factors." *Id.* Here, the jury found that defendant Ayala violated plaintiff's First Amendment rights by retaliating against her based on her speech. The Court finds that plaintiff's lawsuit furthers the goals of § 1988, and that plaintiff is a prevailing party who is entitled to reasonable attorney's fees and costs.

## B.     Lodestar calculation

If the court determines that an applicant is a prevailing party who should be awarded attorneys' fees under § 1988, it must next determine what fees are reasonable. A district court begins its calculation of fees by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 436. The resulting number is frequently called the "lodestar" amount. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested. *Id.* at 433.

### 1.     Hourly rates

"A critical inquiry in determining a reasonable attorneys' fee for purposes of § 1988 is the reasonable hourly rate." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Id.* at 1263.  In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *See Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir.1988).  Other factors that can be considered are (1) the time and labor required; (2) the preclusion of employment by the attorney due to acceptance of the case; (3) time limitations imposed by the client or circumstances; (4) the amount involved and the results obtained; (5) the "undesirability" of the case; and (6) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.  These factors are subsumed in the initial lodestar calculation, and should not serve as independent bases for adjusting fee awards. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).

Plaintiff seeks the following hourly rates for her counsel: (1) Ms. Price, $750 per hour; (2) Ms. Davis, $675 per hour; (3) Mr. Parker, $750 per hour; (4) Ms. Harrell, $400 per hour; and (5) Ms. Williams, $375 per hour. Plaintiff also seeks compensation for two law clerks/paralegals: Mr. Abraham (a 2009 law graduate) and Ms. Lukas (a certified paralegal with 25 years of experience), both at $180 per hour.  Ms. Price has been practicing law since 1983, Ms. Davis has been practicing since 1979, and Mr. Parker has been practicing since 1980. *See* Docket No. 250 ¶ 1; Docket No. 249 ¶ 3; Docket No. 246 ¶ 2.  In support of the hourly rates sought, plaintiff submitted declarations from Ms. Price, Ms. Davis, Mr. Parker, Bill Lann Lee, William McNeill III, James M. Finberg, John L. Burris, Howard Moore Jr., Wayne Johnson, George H. Brown, Roger L. Cook, and supplemental declarations from Mr. Burris and Mr. McNeill.  These declarations attest to the experience, reputation and skill of Ms. Price, Ms. Davis and Mr. Parker, and state that the billing rates requested are in line with the prevailing fees in the community.

Defendant contends that the hourly rates sought by plaintiff's counsel are too high and are unsupported. Defendant asserts that plaintiff did not submit any declarations from attorneys as to the amounts that they charge paying clients, and that plaintiff's counsel "only submitted declarations about how much they have been awarded." Docket No. 273 at 9:26. Defendant asserts that plaintiff's "self-serving" declarations do not satisfy plaintiff's burden of establishing the market rate for the attorneys'

United States District Court
For the Northern District of California

services. Defendant has submitted three declarations from defense attorneys who practice in the civil rights and public entity areas. *See* Docket Nos. 273-3, 273-4, 273-6 (declarations of Dale Allen Jr., Louis Leone, and Gregory M. Fox). Defendant has also submitted the declaration of its auditor, James Schratz.[8] These declarants opine that a reasonable rate for Ms. Price is between $450 to $600 per hour, and that a reasonable rate for Mr. Parker and Ms. Davis is $400 per hour.

The Court concludes that plaintiff has demonstrated that the rates sought for Ms. Price, Ms. Davis and Mr. Parker are supported. Each of these attorneys has considerable experience litigating civil rights and employment cases, and the rates are in line with the overall market rate for experienced civil rights attorneys of similar abilities and experience in the Northern District.[9] In 2010, Judge Wilken concluded that based on "Ms. Price's expertise" and the fact that her "quality of representation was outstanding," the appropriate rate for Ms. Price's work was $700 per hour. *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1100 (N.D. Cal. 2010); *see also id.* (finding support for "a market rate from $380 to $775 per hour for experienced employment and civil rights attorneys in the Northern District [of California]" for the years 2006–2009). Contrary to defendant's assertions, the declarations in support of the senior counsel's rates are not only from "interested" counsel, but are from experienced and well respected Bay Area lawyers who practice in the areas of civil rights, public entity litigation, and employment law, and who are familiar with the work performed by Ms. Price, Ms. Davis and Mr. Parker. In addition, the Court finds that the hourly rates requested are reasonable in light of the novelty and complexity of the issues, and the fact that counsel's work on this case precluded other work.

However, the Court concludes that the hourly rates sought for the two junior attorneys are not

---

[8] Plaintiff has moved to strike the declaration of Mr. Schratz on the ground that he does not meet *Daubert* standards for an expert. The Court declines to strike the entire declaration, as the Court finds that some of the analysis contained therein, such as Mr. Schratz's identification of vague billing entries, is not objectionable. In other areas, the Court agrees with plaintiff that Mr. Schratz's methodology is unsupported, such as his analysis regarding apportionment of the fee award as between PHS and the County defendants. Where this is the case, the Court has noted as much in this order.

[9] The Court rejects defendant's assertion that Oakland, rather than the San Francisco Bay Area, is the relevant legal community. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)). Here, the forum is the Northern District of California, which encompasses both Oakland and San Francisco.

supported. Ms. Harrell is a 2008 law graduate, and Ms. Williams is a 2009 law graduate. Neither Ms. Harrell nor Ms. Williams submitted a declaration describing their work on the case. Ms. Price's several declarations provide some information about these attorneys' backgrounds and the work they performed. Plaintiff asserts that the rates sought for the junior attorneys are supported by the fact that in 2008 and 2009, Gibson, Dunn & Crutcher employed rates of $440 per hour for third-year associates and $325 per hour for second-year associates. However, the evidence in support of this assertion is the declaration of George Brown, a partner at Gibson, Dunn & Crutcher, in which Mr. Brown lists the billing rates of various attorneys at his firm. Docket No. 278-1 ¶ 16. There is no information in Mr. Brown's declaration about the attorneys listed in his declaration, such as their year level. Ms. Price also states that in 2010, Ms. Harrell was awarded a rate of $300 per hour for monitoring work performed in *Freitag v. California Dep't of Corrections*, C 00–2278 TEH, and Ms. Price states that she sought a "reduced" rate of $300 per hour because it has been her practice to charge a reduced rate for monitoring services. In light of the fact that the only evidence in the record in support of Ms. Harrell's rate is $300 per hour, the Court finds it appropriate to award that rate for Ms. Harrell. For Ms. Williams, the Court awards a rate of $265 per hour. *See Campbell*, 718 F. Supp. 2d at 1101-02 (awarding a rate of $245 per hour for a 2008 law graduate, and a rate of $265 per hour for a 2006 law graduate).

The Court notes that the billing records submitted by Ms. Price include some time entries by unidentified timekeepers with the following initials: DFK, GSK, FXM, and MLM. *See generally* Docket No. 250-9. There is no information in the briefing or any of the declarations regarding who these people are or the hourly rates sought for these individuals. Accordingly, the Court finds that plaintiff has failed to meet her burden to show the reasonableness of the time claimed by these unidentified timekeepers, and the Court denies the fees sought for these individuals.

Finally, the Court finds that the hourly rates sought for the paralegals are consistent with the prevailing community rates for such services. *See Campbell*, 718 F. Supp. 2d at 1102.

### 2.    Reasonableness of the hours

"It is plaintiffs' burden to 'document the appropriate hours expended in the litigation by submitting evidence in support of those hours worked.'" *Lucas v. White*, 63 F. Supp. 2d 1046, 1057

(N.D. Cal. 1999) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)).  The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved, in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter."  *Hensley*, 461 U.S. at 431.  Fee applicants, and the Court, should exclude hours that are "excessive, redundant, or otherwise unnecessary."  *Id.* at 434.

The party opposing the fee application "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994).  "Conclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees."  *Lucas*, 63 F. Supp. 2d at 1057-58.

### a.  Block billing

Defendant contends that the entire fee award should be reduced because plaintiff's counsel engaged in "block billing."  "Block billing" refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1129 n.2 (9th Cir. 2008) (quoting *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007)).

The Court has reviewed the "block billing" entries identified by defendants, and finds that (with the exception of Mr. Parker's entries, addressed *infra*) they sufficiently describe the tasks performed to enable the Court's review of the fee petition.  *See Hensley*, 461 U.S. at 437 n.12 (A plaintiff is "not required to record in great detail how each minute of his time was expended," but only "identify the general subject matter of his time expenditure.").  Counsel did not engage in the type of block billing described in *Mendez*. Instead, in the billing entries at issue, counsel included multiple tasks within a single time entry (and often had several such billing entries per day).  For example, an April 7, 2011 entry by Ms. Price states "Receive and review e-mails from Attorney Rudy and Attorney Davis; e-mail Attorney Rudy" for .7 hours. Docket No. 250-9 at 17. These and similar entries are detailed enough for the Court to evaluate the reasonableness of the hours billed.

United States District Court
For the Northern District of California

### b.      Vague entries

Defendant contends that the time entries of Mr. Parker, and to a lesser degree those of Ms. Davis, are too vague to permit meaningful review.  The Court has reviewed the billing records, and finds that while on occasion Ms. Davis could have included more detail, generally her billing records are sufficiently detailed.

However, the Court agrees with defendants that Mr. Parker's billing entries are, for the most part, too vague and brief to permit the Court to assess the reasonableness of the hours claimed.  While Mr. Parker generally did not engage in block billing, his time entries largely lack any detail. For example, numerous time entries are for conference calls with co-counsel, without any description of the substance of the conference call. *See generally* Docket No. 251. Similarly, there are scores of time entries such as "review e-mail from opposing counsel," "review e-mail chain," and "draft e-mail" without any further detail provided. *See id.* Although some legal research entries identify the topic (for example "legal research re First Amendment"), many other time entries are simply for "legal research." *See, e.g. id* at 2, 3, 5 (December 9, 2008 entry for "legal research", 3.75 hours; January 8, 2009 entry for "legal research" for 1.75 hours; September 27, 2010 entry for "legal research", for 3.5 hours; December 13, 2010 entry for "legal research" for 3.65 hours). These descriptions are too vague to enable the Court to assess the reasonableness of the time claimed.

Plaintiff cites *Gates v. Gomez*, 60 F.3d 525 (9th Cir. 1995), for the proposition that billing statements that list the date of communication, the person who performed it, and "sometimes" the issue addressed are more than sufficient to support a fee award. However, *Gates* is inapposite because in that case counsel articulated specific reasons why the lawyers intentionally omitted certain information from the billing records. "As plaintiffs explained before the district court and on appeal, they did not reveal the names of inmates with whom they communicated to protect the confidentiality of their communications and because their clients fear retaliation, and they did not always reveal the issue discussed to preserve attorney-client and attorney work product privileges."  *Id*. at 534.  Here, Mr. Parker has not provided any explanation for why his billing records are intentionally devoid of detail, and the Court cannot surmise a reason for doing so in this case.

The Ninth Circuit has stated that when faced with deficient and vague billing records, a district

United States District Court
For the Northern District of California

1   court may be justified in denying fees altogether. *See Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th

2   Cir.1999) ("The deficient presentation by Norris might well have justified the district court in throwing

3   up its hands and refusing to award any fees whatsoever."). However, it is generally recognized that

4   "deficiencies in documentation are cause for reduction rather than outright denial of fees," *Action on*

5   *Smoking and Health v. C.A.B.*, 724 F.2d 211, 220 (D.C. Cir.1984). Accordingly, the Court exercises

6   its discretion to impose an across-the-board 10% reduction on Mr. Parker's time. *See id.*; *see also*

7   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).[10]

8

9                     **c.     "Overstaffing, duplication and excessive conferencing"**

10          Defendant contends that the hours claimed were unreasonable and excessive because this case

11   was overstaffed, counsel performed duplicative work and they engaged in excessive conferencing.

12   Defendant asserts that it was excessive for plaintiff to have three senior-level attorneys on this case,

13   including Mr. Parker who is not local and who traveled from Seattle to the Bay Area while working on

14   this case. In particular, defendant contends that the number of attorneys present every day at trial was

15   unnecessary and excessive. Defendant notes that total billing for the 11 days of trial was substantial,

16   with Ms. Davis billing 83.3 hours, Mr. Parker billing 161.25 hours, Ms. Price billing 108 hours, and Ms.

17   Williams billing 74 hours, for a combined total of 426.55 hours. Defendant asserts that the four

18   attorneys' trial preparation and trial attendance resulted in duplication of work and duplicative billing.

19          "Participation of more than one attorney does not necessarily amount to unnecessary duplication

20   of effort. Courts must exercise judgment and discretion, considering the circumstances of the individual

21   case, to decide whether there was unnecessary duplication." *Democratic Party of Washington State v.*

22   *Reed*, 388 F.3d 1281, 1286-87 (9th Cir. 2004). The Ninth Circuit has noted that "courts ought to

23   examine with skepticism claims that several lawyers were needed to perform a task, and should deny

24

25          [10] Defendant also contends that Mr. Parker's billing practices are deficient because his billing
     records reflect "numerous entries" in 0.25 increments. Defendant makes no attempt to quantify or
26   calculate what percentage of Mr. Parker's billing entries are made in 0.25 increments. The Court has
     reviewed Mr. Parker's billing records and finds that while some entries are made in 0.25 increments,
27   a majority of the entries are not. *See* Docket No. 251. Indeed, it appears from the Court's review that
     most of Mr. Parker's billing entries are made in 0.10 increments. Accordingly, the Court finds no basis
28   to reduce the fee petition on this ground.

United States District Court
For the Northern District of California

compensation for such needless duplication as when three lawyers appear for a hearing when one would do." *Id.* at 1286.

The Court has reviewed the declarations filed by plaintiff's counsel, and finds that in general counsel have explained the steps that they took to ensure that there was no duplication of work. For example, Ms. Davis states that she handled all matters in the first year the litigation, including drafting and amending the complaint, propounding in responding to written discovery related to all defendants, and defending plaintiff's deposition. Ms. Davis also later took most of defendants' depositions, preparing argued a motion to compel, prepare the mediation briefs and prepared and argued the opposition to defendants' motion for summary judgment. Docket No. 249 ¶ 17.[11] Similarly, Ms. Price states that her firm was primarily responsible for coordinating the trial work in the case, and Mr. Parker states that he was instrumental in developing the retaliation theory and orchestrating how to present it, including conducting most of the legal research on this claim. Docket No. 250 ¶ 55; Docket No. 281 ¶ 13. Mr. Parker also states that he did not bill his travel costs, and that during the hours he was traveling he was working on the case. Docket No. 281 ¶ 23.

However, the Court does find that it was unreasonable to have three senior-level attorneys billing at $675 per hour to $750 per hour for the trial, in addition to the junior associate who attended the trial. The Court recognizes that plaintiff's counsel divided up tasks at trial with Ms. Davis giving the opening statement, Ms. Price and Mr. Parker giving the closing argument, and different counsel presenting and cross-examining various witnesses. Nevertheless, the Court believes that by staffing the case in this manner, it is inevitable that there was some amount of duplication of effort that could have been

---

[11] Defendant objects to this paragraph of Ms. Davis's declaration as argumentative and assuming facts not in evidence. In support of this objection, defendant asserts "NO DUPLICATION? The declaration fails to offer any explanation for the use of four attorneys at trial. The declaration also fails to offer any explanation for the appearance of two or three attorneys at certain depositions, hearings, and mediation." Docket No. 274 at 2. Defendant's objection is not an evidentiary one, and it is not well-founded. As with the vast majority of defendant's objections to plaintiff's declarations, defendant uses evidentiary objections to make legal arguments attacking plaintiff's entitlement to fees. (As another example, defendant objects to Ms. Davis's statement that she seeks compensation for her services at a billing rate of $675 per hour as "assume facts not in evidence, namely that Ms. Davis is worth $675 per hour.") Such objections are a waste of the Court's time, and defendant would be well advised to avoid such tactics in the future.

To the extent that this order relies on any declarations or evidence to which the parties have objected, the Court overrules the parties' objections.

19

avoided. The billing records submitted by plaintiff's counsel show that Ms. Davis, Ms. Price and Mr. Parker attended every day of trial, and that Ms. Williams attended most days of trial. Plaintiff's counsel have not demonstrated that it was necessary to have three and usually four attorneys attend every day of the trial, particularly in light of the high hourly rates of the three senior attorneys. The Court finds that it is appropriate to make a 15% deduction of the trial time to account for this excessiveness.

Defendant also attacks as unreasonably high the number of hours expended on particular tasks performed by Ms. Price or her associates. Defendant asserts that certain pleadings in this case, such as the motions in limine, were copied from the *Campbell* case, and thus the hours sought in this case are unreasonable. Ms. Price responds to each of these attacks in her reply declaration, and the Court finds that defendant has not met his burden to show that any of the particular time challenged in this regard was excessive or unreasonable.

### d. Limited success

Defendant contends that the Court should make a reduction in the hours to account for plaintiff's limited success. "'[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees' under § 1988." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting *Hensley*, 461 U.S. at 440). In *Sorenson v. Mink*, 239 F.3d 1140 (9th Cir. 2001), the Ninth Circuit explained that there is a two-step process for determining the appropriate reduction for "limited success":

> The first step is to consider whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims of which he succeeded." [*Hensley*, 461 U.S.] at 434, 103 S. Ct. 1933. Claims are "unrelated" if they are "entirely distinct and separate" from the claims on which the plaintiff prevailed. *Odima [v. Westin Tuscon Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995)]. Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.
>
> . . .
>
> The second step of the *Hensley* analysis is to consider whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." [461 U.S.] at 434, 103 S. Ct. 1933. In answering that question, a District Court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. at 435, 103 S. Ct. 1933. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id*. A plaintiff may obtain excellent results without receiving all the relief requested. *Id*. at 435 n.11, 103 S. Ct. 1933.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

*Sorenson*, 239 F.3d at 1147 (parallel citations omitted, brackets in *Sorenson*).

At the first step, the Ninth Circuit has held "that related claims involve a common core of facts *or* are based on related legal theories" and that "claims are *unrelated* if the successful and unsuccessful claims are 'distinctly different' *both* legally *and* factually." *Webb*, 330 F.3d at 1168 (emphasis in original). The Court finds that the First Amendment retaliation claim on which plaintiff prevailed against defendant Ayala is factually and legally related to plaintiff's unsuccessful claims against the County and Griffith. Plaintiff brought the same claims against Ayala and Griffith, and she claimed that the County was responsible for Ayala and Griffith's discrimination, harassment and retaliation.

At the second step of the *Hensley* analysis, although plaintiff sued the County, Griffith and Ayala, plaintiff prevailed only against Ayala. The Ninth Circuit has held that "[a] discretionary reduction to reflect that kind of limited success is appropriate." *Webb*, 330 F.3d at 1169 (approving reduction for limited success where plaintiff prevailed against one of four defendants); *Corder*, 947 F.2d at 379 ("[S]ince the plaintiffs succeeded against only a few defendants, a reduction for limited success was permissible."); *Cabrales*, 864 F.2d at 1464 (approving 25% reduction for limited success where plaintiff prevailed against one of three defendants), *reversed on other grounds*, 490 U.S. 1087 (1980). The Court finds that a 25% reduction of the lodestar hours is warranted in recognition of the fact that plaintiff did not prevail against the County or Griffith.

### C.    Apportionment

Whether to apportion the fee award according to time spent is within the discretion of the district court. *See Jones v. Espy*, 10 F.3d 690, 691-92 (9th Cir.1993); *Corder v. Gates*, 947 F.2d 374, 381 (9th Cir.1991); *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125-26 (9th Cir.1981). Defendant contends that the PHS defendants were the main focus of this litigation, and that "[s]ince probably at least 85% of plaintiff's counsel's preparation dealt with the PHS defendants, as opposed to the County defendants, this Court should apportion 15% of the attorneys' fees to the County defendants." Docket No. 273 at 5:8-10. Defendant does not explain how he arrived at the 85% figure, as defendant does not identify any particular time entries, let alone 85% of the time entries, that are attributable to work on the PHS claims. Defendant has submitted the declaration of James Schratz, a

United States District Court
For the Northern District of California

fee auditor, and Mr. Schratz, in recommending an apportionment of fees, states "[a]ltogether, plaintiff had 10 causes and 7 defendants available, but only 2 causes and 2 defendants survive to trial, and the jury was instructed on only one cause as it pertained to the two defendants. In the end, Sergeant Griffith was vindicated, and only Lieutenant Ayala was found liable, for retaliation. This result amounts to about 2 percent of the overall litigation effort (7 causes x 7 defendants, each defendant/cause combination being 1/49th or 2 percent of the total), although a real-world analysis of the allocation issue is considerably more complicated."  Docket No. 273-7 ¶ 29.

Plaintiff opposes apportionment and argues that defendant's "unifactor" approach has been rejected in the Ninth Circuit.  Plaintiff cites *Cunningham v. County of Los Angeles*, 859 F.2d 705, 710 (9th Cir. 1988), *modified at* 879 F.2d 481, 486, in which the Ninth Circuit stated, "We agree that a unifactor approach tying the number of hours accepted as reasonable solely to the proportion of defendants ultimately prevailed against would be inconsistent with a statutory mandate that district courts exercise discretion by considering *all* factors relevant to reasonableness." (emphasis in original). However, while a "unifactor" approach is not appropriate, Ninth Circuit case law is clear that when a district court calculates a fee award it has discretion to apportion among defendants based on time spent.

The Court disagrees with defendant's assessment that PHS was the primary focus of this litigation. The pleadings demonstrate that plaintiff alleged overlapping and interrelated race and gender discrimination, harassment and retaliation claims, as well as First Amendment retaliation claims, against the PHS and County defendants, and that both sets of defendants were the equal focus of plaintiff's claims.[12]  Plaintiff's central theory throughout this litigation was that the PHS and County defendants worked together to retaliate, harass, and discriminate against her. All of plaintiff's claims arose largely out of the same facts, and plaintiff relied on the same evidence to support her claims against both sets of defendants. For example, although the SAC alleged three FEHA claims only against the PHS

_____

[12] Indeed, a comparison of the original complaint, FAC and SAC demonstrates that at different times, plaintiff alleged the same claim against only the PHS defendants, only the County defendants, or against all defendants. For example, the original complaint and the SAC alleged the FEHA aiding and abetting discrimination, retaliation and harassment against the County defendants, while the FAC alleged the aiding and abetting claim against all defendants. Similarly, while the original complaint alleged the FEHA retaliation claim against all defendants, the FAC and SAC alleged that claim only against the PHS defendants.

United States District Court
For the Northern District of California

defendants, the SAC alleged that Ayala and Griffith were liable under FEHA for aiding and abetting the PHS employees' "acts of discrimination, racial harassment, and retaliation." SAC ¶ 99. Thus, discovery directed at the aiding and abetting claim necessarily involved investigation of PHS's conduct.  The FEHA race and gender discrimination, retaliation and harassment claims overlapped with the 42 U.S.C. § 1983 race and gender claims, which were alleged against all defendants.  Similarly, the § 1983 First Amendment retaliation claim (alleged against all defendants) overlapped factually with the other retaliation claims as well as the discrimination and harassment claims because plaintiff challenged the same adverse acts as both retaliatory and as evidence of discrimination and harassment.

Although the Court disagrees with defendant's apportionment methodology, the Court exercises its discretion and concludes that apportionment based on time spent is appropriate in this case.  Plaintiff settled with the PHS defendants, and the Court finds that as a matter of fairness and equity that defendant Ayala should not be required to pay plaintiff's fees associated with litigating against PHS.[13] The Court finds instructive *Woods v. Graphic Communications*, 925 F.2d 1195 (9th Cir.1991).  In *Woods*, the plaintiff brought a race discrimination lawsuit against his employer and his union, alleging racial harassment that interfered with his ability to enforce his labor contract. The employer settled the claims against it and was dismissed from the suit, and the plaintiff proceeded to a court trial on his claims against the union. The plaintiff prevailed at trial, and was awarded attorney's fees under § 1988. The district court apportioned fees between the union and the employer, and in doing so divided the lawsuit into three phases. "Phase I consisted entirely of work performed before the Union was a party to the lawsuit.  Phase II included work performed while both [the employer and the Union] were parties, and Phase III included work performed after [the employer] was dismissed." *Id*. at 1207.  The district court awarded fees against the union as follows: half of the fees for phases I and II, and all of the fees for phase III. *Id*.  On appeal, the union did not challenge the court's award of fees for phases II and III, but contended that it should not be liable for half of the fees of phase I. The Ninth Circuit affirmed the fee award, acknowledging that while the party that is the focus of the litigation should ordinarily bear

---

[13]  Plaintiff implicitly recognizes this when she states that the fee award should be offset by the fee portion of the PHS settlement.  *See* Docket No. 306 at 8:1-4.  Rather than offsetting the fee award by the $150,000 that plaintiff received in the PHS settlement and paid to her attorneys as fees, the Court finds that it is more equitable to apportion the fees based on time spent.

United States District Court
For the Northern District of California

the bulk of the litigation's costs, the district court did not abuse its discretion in allotting a portion of the phase I fees to the union because some of the plaintiff's efforts had been directed at the union during that phase. *Id.*; *see also Jones*, 10 F.3d at 692 n.2. (where the causes of action against two defendants are inextricably intertwined, district court did not abuse its discretion by apportioning time on a 50/50 basis).

The Court finds that it is appropriate to apportion fees in a manner similar to what the district court did in *Woods*. During the first phase of this litigation, which was from the inception of this case until the PHS settlement, plaintiff litigated her interrelated claims equally against the PHS defendants and the County defendants. Based upon the Court's familiarity with this litigation, and a review of the billing records submitted by counsel, the Court finds that during the first phase of litigation, a 50/50 apportionment between the PHS defendants and defendant Ayala is appropriate. During the second phase of litigation, which is the period of time after the filing of the May 6, 2011, dismissal of the PHS defendants, the focus of this litigation was solely on the County defendants, and thus defendant is fully responsible for the fees incurred during that time period.

### D.     Costs

Plaintiff's motion sought reimbursement of $39,878.50 in nonstatutory costs. Defendants object, *inter alia*, that these costs include costs taxed by the Clerk and nonrecoverable amounts paid to experts. In her reply, plaintiff concedes that the expert costs are not recoverable, and has deducted those amounts. Plaintiff has also eliminated the amount of costs taxed by the clerk, and now seeks $18,638.37. *See* Docket No. 284-2.

The Court has reviewed the revised costs, and finds that with one exception they are reasonable and recoverable. The exception is $6,540.55 requested for a trial consultant's fee. The Court finds that plaintiff has failed to adequately set forth the services the trial consultant provided. None of the declarations submitted by plaintiff's counsel describe what work the consultant performed, nor do they provide any information about the qualifications of the consultant. The only information before the Court is the amount requested and the name of the consultant, the National Jury Project. *See* Docket No. 250-9 at 73. The Court concludes that plaintiff has failed to adequately set forth the nature of the

services provided by the trial consultant, much less demonstrate their utility and reasonableness. *See Clawson v. Mountain Coal Co., L.L.C.*, Civil Action No. 01-cv-02199-MSK-MEH, 2007 WL 4225578, at *14 (D. Colo. Nov. 28, 2007) (denying trial consultant fees under § 1988 where counsel failed to adequately document the services performed and where consultant's services appeared to be duplicative of attorney work).

### E.    Fees on fees

Plaintiff seeks an award of attorneys' fees for the time spent litigating the fee motion.  The Ninth Circuit "has repeatedly held that time spent by counsel in establishing the right to a fee award is compensable." *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992). The Court holds that plaintiff is entitled to recover her fees on fees, and reserves the right to determine the appropriate amount of the supplemental fees and costs. The Court directs plaintiff's counsel to file within 14 days of the filing date of this order a supplemental declaration detailing the time spent on the fee application, as well as any costs that are sought.  If defendant wishes to file an opposition limited solely to the reasonableness of the fees on fees sought, defendant may do so within 14 days of the filing of plaintiff's supplemental declaration. Plaintiff may file a reply within seven days thereafter.

### F.    Summary of deductions and supplemental declaration ordered

Within 14 days of the filing date of this order, plaintiff's counsel are directed to file a supplemental declaration that reflects the following:

1.    A recalculated lodestar, recalculated as follows:

A.    All time for Ms. Harrell calculated at $300 per hour, and all time for Ms. Williams calculated at $265 per hour;

B.    Eliminate all time associated with the following timekeepers:  DFK, GSK, FXM, and MLM

C.    A 10% across-the-board deduction to Mr. Parker's hours due to his vague billing entries;

D.    A 15% deduction to the hours claimed by plaintiff's counsel for attending trial;

United States District Court
For the Northern District of California

2.    An apportionment of the recalculated lodestar as follows: 50% of the recalculated lodestar for the period of time from the inception of this case until the filing of the dismissal of the PHS defendants, is attributed to the PHS defendants and is therefore not recoverable from defendant Ayala. In the event that this amount is less than the $150,000 in fees that plaintiff's counsel received from the PHS settlement, the Court reserves the right to use the settlement fees to offset the fee award;

3.    After apportionment, a 25% across-the-board reduction to all time claimed to account for plaintiff's limited success by not prevailing against the County or Griffith;

4.    A $6,540.55 deduction of the trial consultant's fees from the merits costs; and

5.    The fees and costs sought for litigating plaintiff's fee motion.

## CONCLUSION

For the foregoing reasons, defendant's motion for credit on the judgment is GRANTED IN PART; plaintiff's motion for prejudgment interest is GRANTED; defendants' motion for attorneys' fees and costs is DENIED; and plaintiff's motion for attorneys' fees and costs is GRANTED IN PART. This order resolves Docket Nos. 213, 220, 245, 277, and 289.

**IT IS SO ORDERED.**

Dated: September 25, 2012

_____
SUSAN ILLSTON
United States District Judge

26